MUTH, Jr., Russell A., Individually and as Next Friend of Muth, Robert Alexander

v.

CENTRAL BUCKS SCHOOL DISTRICT, Dr. Newman, Thomas L., Superintendent of the Central Bucks School District and Margaret A. Smith, Secretary of Education, Commonwealth of Pennsylvania.

Appeal of Russell A. MUTH, Jr., in Nos. 86–1605, 87–1159.

Appeal of Margaret A. SMITH, Secretary of the Pennsylvania Department of Education, in Nos. 86–1610, 87–1134.

Appeal of Thomas L. NEWMAN and Central Bucks School District, in Nos. 86–1629, 87–1130.

Nos. 86–1605, 86–1610, 86–1629, 87–1130, 87–1134 and 87–1159.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) Sept. 2, 1987.

Decided Jan. 29, 1988.

Rehearing and Rehearing In Banc Denied Feb. 29, 1988.

Russell A. Muth, Jr., pro se.

LeRoy S. Zimmerman, Atty. Gen., Maria Parisi Vickers, Sr. Deputy Atty. Gen., John G. Knorr, Sr. Deputy Atty. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Chief, Litigation Section, Office of Atty. Gen., Philadelphia, Pa., for Pennsylvania Secretary of Educ.

Joanne D. Sommer, Eastburn and Gray, Doylestown, Pa., for Central Bucks School District and Dr. Thomas L. Newman.

Leonard Rieser, Philadelphia, Pa., for amicus curiae Pennsylvania Ass'n for Children and Adults with Learning Disabilities.

Before WEIS, STAPLETON, and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

At issue in this appeal are alleged procedural and substantive violations of the Education of the Handicapped Act, 20 U.S.C. §§ 1401–1415 (1982) (EHA or the Act), as amended by the Education for All Handicapped Children Act of 1975, Pub.L. No. 94–142. The district court held that the procedures devised by the State of Pennsylvania for complying with the conditions on which the EHA provides federal funding for the education of handicapped children available to states did not meet EHA requirements. The court then held plaintiff entitled to reimbursement for expenditures he made for his handicapped son's tuition at a private school for the 1983–84 academic year. The court did not, however, grant plaintiff an order directing defendants to place plaintiff's son in a private school for the academic year 1986–87 and thereafter. Plaintiff was awarded partial reimbursement of the attorneys' fees he incurred in connection with this lawsuit. As the district court found that the EHA abrogated eleventh amendment state immunity, the State of Pennsylvania was held jointly and severally liable for the awards to plaintiff. We will affirm the judgment of the district court on every issue except its determination of the amount of attorneys' fees to which plaintiff is entitled. On that issue, we will remand for further proceedings.

### I.

Plaintiff, Russell A. Muth, Jr., is the parent of Robert Alexander Muth ("Alexander"), a bright child with a language learning disability and associated emotional problems. There is no dispute that Alexander is "handicapped" within the meaning of the EHA, 20 U.S.C. § 1401(a)(1) (1976 & 1987 Supp.) and is an "exceptional" child under 22 Pa.Code §§ 13.1 and 341.1. Accordingly, the EHA requires that Pennsylvania, in return for its receipt of federal funding under the Act, provide Alexander with a free appropriate public education. 20 U.S.C. § 1412(1). Alexander's education must be tailored to his unique needs by means of an individualized educational program (IEP).[1] 20 U.S.C. §§ 1401(18), 1414(a)(5).

The EHA also requires that Pennsylvania establish procedural safeguards to protect the interest of a child such as Alexander in receiving a free appropriate public education. Not only does the parent of such a child have the right to participate in developing the child's IEPs, but the parent may challenge in administrative hearings and in court a proposed IEP which he or she believes provides the child with a lesser education than appropriate. Furthermore, the parent of a handicapped child may challenge conduct of the educational agency which the parent feels has infringed his or her procedural rights. In this case, Muth has claimed both that Alexander was denied an appropriate education and that Pennsylvania's procedures violate rights guaranteed by the EHA and the federal regulations promulgated to supplement the Act, 34 C.F.R. §§ 300 et seq. (1987). In addition to pursuing these claims in administrative hearings pursuant to the Pennsylvania procedures that implement the EHA, 22 Pa.Code §§ 13.31 et seq., Muth has brought this suit against the Central Bucks School District (the "School District") and the Secretary of Education of the Commonwealth of Pennsylvania (the "Secretary").[2]

---

**1.** An IEP is a comprehensive plan of the educational program a child is to follow. It is developed by school officials, specialists in the education of handicapped children, and teachers, working with the parents or guardians and, where appropriate, the child. The IEP states, among other things, the objectives of the child's program, the child's educational needs, the services to be provided by the school, and criteria for evaluating the child's progress. IEPs are subject to review and revision at least annually.

20 U.S.C. § 1401(19); 34 C.F.R. §§ 300.346, 300.343(d); 22 Pa.Code §§ 341.15, 341.17.

**2.** Dr. Newman, the Superintendent of the Central Bucks School District, was initially named by Muth as a defendant as well. However, the suit against Newman was dismissed on the ground that Newman was entitled to immunity under the standard of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (official is immune if did not violate statutory or constitutional rights of which a reasonable

Alexander first attended Central Bucks schools in 1980.[3] By this time, Alexander's learning disability had already been diagnosed; consequently, when Alexander was enrolled in elementary school for the 1980–81 school year, the School District formulated an IEP for him. Under this IEP, Alexander was placed in a learning disability resource room class, where he received small group and one-on-one instruction and speech and language therapy. He was mainstreamed, or placed in regular classes, for art, music, physical education, library, lunch, and recess. Muth approved this initial IEP, as well as revisions made in it in February of 1981. The School District and Muth were also able to agree on an IEP for Alexander for his final year in elementary school, academic year 1981–82, and his first year of junior high school, academic year 1982–83. Improvements in Alexander's scores on various tests indicate that he made considerable educational progress during this time.

At this point, however, Alexander began expressing a desire to be placed in regular classes rather than in classes for learning disabled students. At Muth's request, the School District agreed to mainstream Alexander for English and science, on a trial basis, beginning in March of 1983. During that month, the School District prepared a proposed IEP for the 1983–84 school year that retained Alexander's placement in the district and included mainstreaming in English and science.

Mainstreaming was not very successful, and on June 17, 1983 an IEP conference was held by the School District to consider various changes in Alexander's program. Muth was in attendance. The main recommendation which emerged from this conference was that Alexander be returned for all substantive subjects to the more restrictive setting of a learning disabled classroom. The School District's proposal was to be embodied in a new IEP to be developed over the summer and implemented in the 1983–84 school year.

Muth, dissatisfied with the School District's planned program for Alexander, requested that a due process hearing be held on the question of whether the School District was providing an appropriate education to Alexander. The School District received this request on June 20, 1983. Muth further requested that no change be made in Alexander's current program until such a hearing had been held.[4]

Before the fall of 1983, Muth decided to enroll Alexander at the Landmark School, a private school in Massachusetts for learning disabled children. Alexander started at Landmark in September of 1983, and spent the 1983–84 academic year there. Alexander also spent most of the 1984–85 academic year at Landmark, but transferred in April of 1985 to Wyncote Academy,[5] for reasons which are not entirely clear. Alexander returned from Wyncote to the Central Bucks school system at the start of academic year 1986–87.

Muth's due process hearing was held on September 30, 1983 before Hearing Officer Vernard Trent.[6] At this hearing, the School District presented its March, 1983

person would have known). This dismissal is not challenged on appeal.

3. Prior to this time, Alexander had lived with his mother in Colombia, South America. He had there had three years of schooling, and had spoken Spanish almost exclusively. When he came to live with his father in Pennsylvania, Alexander was 10 years old.

4. Such a request from a parent is a legal bar against any change in the child's placement under 22 Pa.Code § 13.32(22). Pennsylvania law is required to include this provision by 20 U.S.C. § 1415(e)(3) and 34 C.F.R. § 300.513(a). The School District therefore refrained from revising Alexander's IEP to reflect the June, 1983 recommendations.

5. Muth has not requested that he be reimbursed for tuition for the time Alexander spent at Wyncote, which has no special education program.

6. Normally, Pennsylvania law requires the initial due process hearing to be held within 30 days of receipt by the Pennsylvania Department of Education of the parent's request, 22 Pa.Code 13.32(10). Under the same provision, however, a parent may request and receive extensions of these time limits. In this case, the extra delay was largely, if not entirely, due to Muth's own requests for postponement of the hearing. *See* App. at 285.

IEP. While the School District's June recommendations were placed into evidence, they apparently had never been incorporated into a new IEP. Muth, acting as his own attorney, made various objections to the School District's proposed programs.

Trent handed down his decision on October 31, 1983; he held that the School District's current 1983–84 IEP, which still included the mainstreaming for English and science, was inappropriate. Trent also made a set of recommendations: that the School District should consider whether Alexander should be in a more restrictive placement; that the School District should address Alexander's auditory disability; and that the School District, considering Alexander's giftedness, should provide Alexander with additional special activities and services. Trent did not order that Alexander be placed in a private school offering a program similar to Landmark's, as Muth had requested, nor did he find that the School District was unable to provide Alexander with an appropriate education.

Both Muth and the School District appealed from Trent's decision. Pursuant to 22 Pa.Code § 13.32(24), the appeal was submitted to the Secretary. On January 23, 1984, the Secretary decided to remand the case to Hearing Officer Trent, with instructions to the School District to revise the IEP for Alexander to include, *inter alia,* the June, 1983 recommendations and to then present the revised IEP to Trent. The School District, working with Muth, proceeded to revise the IEP.

On June 7, 1984, the School District presented to Trent its revised IEP, dated May 1, 1984, and Muth presented his objections to it. On July 25, 1984, Trent issued his decision that this modified IEP was an appropriate program of special education for Alexander, and that the School District was capable of implementing it. Muth again appealed to the Secretary, and on

October 24, 1984, the Secretary affirmed Trent's decision.

During the course of the above proceedings, on April 28, 1984, Muth filed suit in federal district court.[7] He claimed that the School District's IEP for Alexander was inappropriate under the EHA, and sought tuition reimbursement for 1983–84 and an order that the School District pay for Alexander to attend Landmark in future.[8] Muth was allowed to amend his complaint to add a claim that Pennsylvania's due process procedures did not conform to the requirements of the EHA, 20 U.S.C. § 1415, and on June 2, 1986, the trial court granted summary judgment to Muth on this procedural claim. *Muth v. Smith,* 646 F.Supp. 280 (E.D.Pa.1986). The court also requested the School District to prepare an IEP for Alexander for the 1986–87 school year. In response, an IEP was prepared and submitted for the 1986–87 school year that was very similar to the IEP for 1983–84.

A trial was held in August of 1986 on the issues of the effect of the procedural flaws of the Pennsylvania statute and the appropriateness of the 1983–84 and 1986–87 programs offered to Alexander by the School District. The district court held that the School District's IEPs for both years were appropriate, but that the procedural defects of Pennsylvania's administrative procedures "rendered the IEP inappropriate for 1983–84." Memorandum and Order of August 28, 1986, App. at 846. Accordingly, the court ordered judgment in Muth's favor for the 1983–84 tuition reimbursement. The court also awarded Muth the attorneys' fees incurred in pressing his arguments on the procedural violations and on the substantive sufficiency of the 1983–84 IEP. The judgment was entered against both the School District and the Secretary.

Muth appeals from the district court's judgment that the proposed 1986–87 IEP

---

7. Defendants' argument that Muth's suit in federal district court was improper as Muth failed to exhaust his administrative remedies did not prevail in district court and is not before us on appeal.

8. Muth also alleged violations of § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and of the equal protection and due process clauses of the 14th amendment via 42 U.S.C. § 1983, but later amended his complaint to drop those claims.

would provide Alexander with a free appropriate public education, and again seeks an order directing that the defendants place Alexander in a private school with programs similar to Landmark's. Muth also challenges the district court's determination that the 1983–84 IEP was appropriate. The School District and the Secretary have filed cross-appeals challenging the district court's determination that Pennsylvania's administrative procedures violated federal law, that tuition reimbursement was an appropriate remedy, that the EHA abrogates Pennsylvania's immunity, and that the attorneys' fees award was proper.

## II.

We first address Muth's contention that the 1983–84 and 1986–87 IEPs proposed by the School District should have been found inappropriate. Under 20 U.S.C. § 1415(e)(2), a district court is to determine whether a challenged IEP is appropriate based on a preponderance of the evidence. On review, we may overturn this factual decision only if we find clear error. *Wexler v. Westfield Bd. of Educ.*, 784 F.2d 176, 181 (3rd Cir.1986), *cert. denied* — U.S. ——, 107 S.Ct. 99, 93 L.Ed.2d 49 (1986). In this case, we conclude that the district court did not err in finding the IEPs appropriate.

■ As the Supreme Court commented in its first case involving interpretation of the EHA, *Board of Educ. of Hendrick Hudson Cent. School Dist. v. Rowley*, 458 U.S. 176, 189, 102 S.Ct. 3034, 3042, 73 L.Ed. 2d 690 (1982), "[n]oticeably absent from the language of the statute is any substantive standard prescribing the level of education to be accorded handicapped children."[9] In *Rowley*, the Court interpreted the EHA as

requiring "no more than a basic floor of opportunity," *id.* at 201, 102 S.Ct. at 3048, consisting of "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Id.* at 203, 102 S.Ct. at 3049. The EHA does not require a program that maximizes a handicapped child's potential, *id.* at 197 n. 21, 199, 102 S.Ct. at 3046 n. 21, 3047, but rather one which is "reasonably calculated to enable the child to receive passing marks and advance from grade to grade." *Id.* at 204, 102 S.Ct. at 3049. *See also Board of Educ. of E. Windsor Regional School Dist. v. Diamond*, 808 F.2d 987, 991 (3d Cir.1986) (EHA "requires a plan likely to produce progress, not regression or trivial educational advancement"). The Court posed two questions to be answered by district courts in cases such as the one before us now:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

458 U.S. at 206–07, 102 S.Ct. at 3051. Muth's factual challenge is to the district court's affirmative answer to the second *Rowley* question.

■ There is ample evidence in the record to support the district court's carefully-reached conclusion that the 1983–84 and 1986–87 IEPs developed by the School District constituted a free appropriate public education for Alexander under the EHA as interpreted by *Rowley*.[10] Among the

9. The Act does expressly define the phrase "free appropriate public education." Section 1401(18) provides that:
   The term "free appropriate public education" means special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the

individualized educational program required under section 1414(a)(5) of this title.

10. Muth complains that he had no chance to participate in the development of the 1986–87 IEP. It is true that the 1986–87 IEP considered by the district court was prepared unilaterally by the School District at the court's request. However, this IEP was based on the 1983–84 IEP, which Muth participated in developing; on the June, 1983 recommendations, which Muth was also involved in developing; and on the

factors considered by the district court were the School District's plan and its ability to make available to Alexander computer facilities, a variety of elective courses, one-on-one and small group instruction, mainstreaming for some classes,[11] and regular psychological counseling. Additionally, the district court considered the opportunity for Alexander, if he remained in the School District's programs, to develop his relationship with his father and with his peers in the community. The district court heard evidence from a number of experts and educators, and compared the School District's programs with those offered by Landmark,[12] before concluding that the School District's proposed programs were appropriate.[13] We find no clear error in this conclusion, and therefore will not set it aside.

### III.

The next issue presented for our review is whether the district court was correct in holding that the Pennsylvania statutory scheme for providing parents of handicapped children with due process violates federal standards. As this is a question of statutory construction, our review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981).

The EHA allows states to choose to establish either a one-tier or two-tier due process hearing system for review of the appropriateness of a challenged IEP. In a one-tier system, an impartial hearing is conducted under the auspices of the state educational agency, and the losing party may appeal to the courts. In a two-tier system, an impartial hearing is conducted under the auspices of the local educational agency, and appeal may be taken to the state level and then to the courts. Because the exact language of the federal statute and regulations is important in determining whether Pennsylvania law is in compliance with federal requirements, we set out the relevant parts of the EHA and the Code of Federal Regulations here despite their length. Under 20 U.S.C. § 1415(b)(2):

> Whenever a complaint has been received under paragraph (1) of this subsection [requiring an opportunity for the parent to present complaints with respect to any matter relating to the child's education], the parents or guardian shall have an opportunity for an impartial due process

recommendations of Hearing Officer Trent, who heard Muth's evidence and arguments. The reason for the district court's request that the School District go ahead and draft a proposed IEP for the 1986–87 school year was so that the District would not have to start from scratch in developing an IEP for Alexander at the beginning of that year. In this way, the School District would be able to meet with Muth before or at the beginning of that academic year, and develop a final program with the requisite parental input. Muth does not claim that he was excluded from involvement in developing Alexander's IEP after August 28, 1986, when the decision of the district court holding the 1986–87 IEP appropriate was handed down. Accordingly, we find Muth has no ground for complaint on this score.

**11.** As the district court noted, there is a statutory preference for choosing the least restrictive placement appropriate for a handicapped child. 20 U.S.C. § 1412(5)(B); *see Kruelle v. New Castle County Sch. Dist.*, 642 F.2d 687, 695–96 (3d Cir.1981) (recognizing preference but also recognizing that a residential program may be the only appropriate program for some severely disabled children). The School District's program, which includes some mainstreaming,

would be less restrictive than the residential programs requested by Muth.

**12.** Muth claims in particular that the trial judge clearly erred in finding that the multisensory approach of the School District, which emphasized visual instruction (Alexander's strength), was the same as the multisensory approach used by Landmark, which emphasized oral or phonetic instruction (Alexander's weakness). It appears that the two approaches, while very similar, do differ. However, the record supports the conclusion that the approach used by the School District was an appropriate one, which is all that is required by law. Therefore, even if the trial judge be understood as concluding that the School District's chosen method of instruction was identical to Landmark's, the error was harmless.

**13.** In this appeal, Muth raises for the first time the claim that Pennsylvania law goes beyond the federal minimum to set a higher substantive standard for the quality of the program which must be available to handicapped children. Appellant's Brief at 15. Because Muth did not make this argument before the district court, we decline to express an opinion on it.

hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.

Section 300.507 of the regulations amplifies this:

(a) A hearing may not be conducted:

(1) By a person who is an employee of a public agency which is involved in the education or care of the child, or

(2) By any person having a personal or professional interest which would conflict with his or her objectivity in the hearing.

(b) A person who otherwise qualifies to conduct a hearing under paragraph (a) of this section is not an employee of the agency solely because he or she is paid by the agency to serve as a hearing officer.

Section 1415(c) provides that:

If the hearing required in paragraph (2) of subsection (b) of this section is conducted by a local educational agency ... any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing. The officer conducting such review shall make an independent decision upon completion of such review.

Section 300.510 adds to this that:

(a) If the hearing is conducted by a public agency other than the State educational agency, any party aggrieved by the findings and decision in the hearing may appeal to the State educational agency.

(b) If there is an appeal, the State educational agency shall conduct an impartial review of the hearing. The official conducting the review shall:

.     .     .     .     .

(3) Seek additional evidence if necessary. If a hearing is held to receive additional evidence, the rights in § 300.508 [to be represented by counsel, to present evidence, to cross-examine witnesses, and so forth] apply;

.     .     .     .     .

(c) The decision made by the reviewing official is final, unless a party brings a civil action under § 300.511.

Under § 1415(e)(1):

A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) of this section shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (c) and paragraph (2) [allowing appeal to courts by any party who has no right to appeal under § 1415(c)] of this subsection. A decision made under subsection (c) of this section shall be final, except that any party may bring an action under paragraph (2) of this subsection.

And under § 300.511:

Any party aggrieved by the findings and decision made in a hearing who does not have the right to appeal under § 300.510 of this subpart, and any party aggrieved by the decision of a reviewing officer under § 300.510 has the right to bring a civil action under [§ 1415(e)(2)].

Finally, 34 C.F.R. § 300.512 adds a stringent time limitation on these proceedings:

(a) The public agency shall insure that not later than 45 days after the receipt of a request for a hearing:

(1) A final decision is reached in the hearing; and

(2) A copy of the decision is mailed to each of the parties.

(b) The State educational agency shall insure that not later than 30 days after the receipt of a request for a review:

(1) A final decision is reached in the review; and

(2) A copy of the decision is mailed to each of the parties.

(c) A hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs

(a) or (b) of this section at the request of either party.

Thus, the federal scheme contemplates that a child and his or her parent who are dissatisfied with a proposed IEP will normally receive a final, impartial, judicially reviewable, administrative decision within two and one-half months of a request for a hearing.

Under the system chosen by Pennsylvania to implement these federal requirements, whenever a school entity purposes to alter the educational status of a handicapped child, it must notify the parents of their "right to a placement conference with the school entity involved and of the right to a full hearing before the Secretary or the designee of the Secretary on the proposed action." 22 Pa.Code § 13.32(2). If the conference does not resolve any dispute, the parent may request a due process hearing. § 13.32(9). The request must be forwarded by the school district within 10 days to the Department of Education of the Commonwealth, a state agency headed by the Secretary. § 13.32(10). The Secretary, or his designee, then assigns a hearing officer so that a hearing may be held no less than 15 days, and no more than 30 days, after the receipt of the request by the Department. § 13.32(10), (12). The individual assigned by the Secretary or his designee may not be "an officer, employee, or agent of any school district or intermediate unit in which the person resides." § 13.32(12). The hearing must be held in the school district involved. § 13.32(11).

After the due process hearing, the hearing officer must render findings of fact and conclusions of law in no more than 20 days. § 13.32(21). "The decision of a hearing officer may be appealed to the Secretary." § 13.32(24). The district court also found as a fact that the statement of written procedures provided to parents refers to the hearing officer's report as "Findings of Fact ... and a list of recommended orders (recommendations) which the hearing officer believes the Secretary of Education should adopt." 646 F.Supp. at 283.

The district court held that Pennsylvania has elected to have the initial hearing and the review conducted at the state level and that this is a violation of federal law. The court also held that even if the initial Pennsylvania hearing were a local one, Muth would be entitled to summary judgment on his procedural claims because the Secretary's remand to Trent violated the finality requirement of federal law, and because the Secretary must be considered an employee of Pennsylvania's state educational agency and an improper reviewing officer. We address those issues in reverse order.

### 1. *The involvement of the Secretary*

The EHA speaks of the due process hearing being "conducted by the State educational agency or by the local educational agency ... as determined by state law." § 1415(b)(2). It also describes the "impartial review of such hearing" as being "conduct[ed]" by the state educational agency. § 1415(c). However, the text of the statute, the regulations, and the legislative history establish that due process hearings and impartial reviews are, in actuality, to be conducted by individuals called "hearing officers" or merely "officers," e.g. § 1415(c); § 300.507, appointed by the agency under whose auspices the due process hearing or impartial review is held, and that it is these officers who are to be the decisionmakers. Section 1415(b)(2) provides that a due process hearing, whether "conducted" by a local agency or a state agency, shall be presided over by an individual who shall not be an "employee of such agency." Section 1415(e)(1) provides that any "decision made in [such] a hearing shall be final" unless additional administrative or judicial review is permitted and sought.

█ Section 1415(c) speaks about review of the decision reached at the due process hearing where a state elects a two-tier system. It specifies that the review shall be conducted by an "officer" who is "impartial" and will make "an independent decision." Section 300.510 of the regulations, promulgated under the authority of § 1415(c), allows the reviewing officer to hold a hearing and receive additional evidence, but provides that if a hearing is held

it must conform to the requirements for an initial due process hearing. Section 300.-510 also requires that the decision of the reviewer be "final."

The regulations provide that "each public agency shall keep a list of persons who serve as hearing officers," § 300.507(c), suggesting that each agency, local or state, is to do the appointing of the decisionmaker at its particular level.

The Conference Committee on the EHA made the thinking behind these provisions unmistakably clear in its Joint Explanatory Report:

> any hearings are not conducted by the agency itself, but rather at the appropriate agency level. The hearing will be conducted by an impartial officer since the State or local agency or intermediate unit will be a party to any complaint presented.... [N]o hearing may be conducted by an employee of the State or local educational agency involved in the education or care of the child. The conferees have adopted this language to clarify the minimum standard of impartiality which shall apply to individuals conducting due process hearings and individuals conducting a review of the local due process hearing.

S.Conf.Rep. No. 455, 94th Cong., 1st Sess. 49, *reprinted in* 1975 U.S.Code Cong. & Admin.News 1425, 1502.

As the Secretary stresses, although the EHA expressly forbids employees of an educational agency from serving as hearing officers for due process hearings, § 1415(b)(2), it does not contain a similar express prohibition with respect to officers assigned to conduct "impartial reviews." As we have noted, however, it does stipulate that such reviewing officers must be "impartial" and reach an independent decision. Given this fact, the ultimate objectives of the process, the similarity of the responsibilities of due process hearing officers and impartial reviewing officers, and the above-quoted legislative history, we and most other courts addressing the issue have concluded that employees of a state educational agency may not be appointed to conduct an impartial review.

In *Grymes v. Madden,* 672 F.2d 321, 323 (3d Cir.1982), this court held that service as state-level review officers by employees of the Delaware State Department of Public Instruction constituted a denial of impartial review. In *Helms v. McDaniel,* 657 F.2d 800, 806 n. 9 (5th Cir.1981), *reh'g denied* 664 F.2d 291, *cert. denied* 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982), the Court of Appeals for the Fifth Circuit found that employees of the state educational agency could not conduct a review because "[a]s the legislative history indicates, the impartiality demanded in the review proceeding cannot be achieved when the educational agency or one of its employees is in charge of the proceeding." Similarly, in *Colin K. by John K. v. Schmidt,* 715 F.2d 1, 5 n. 3 (1st Cir.1983), the Court of Appeals for the First Circuit said that the "legislative history indicates that the prohibition against review by an employee of the agency involved extends to the second level of administrative appeal as well."

Having concluded that employees of the state educational agency may not conduct a review proceeding under § 1415(c), we must next determine whether the Secretary of Education of the State of Pennsylvania is an employee of the state educational agency for purposes of the EHA.

In the *Grymes* case, the review officer was an employee of the Delaware Department of Public Instruction, *see Grymes v. Madden,* No. 79–55, Slip Op. at 4 (D.Del. 1979), *aff'd,* 672 F.2d 321 (3d Cir.1982), and not a state official of cabinet rank like the Secretary. The Secretary attempts to distinguish *Grymes* on this basis, relying upon caselaw in which the impartiality of a high state official was presumed in other contexts. *E.g., Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). Several courts have taken a contrary view, holding that officials in positions similar to the Secretary's are to be considered employees of the state agency and unable to conduct the impartial reviews required by the EHA. In *Robert M. v. Benton,* 634 F.2d 1139, 1142 (8th Cir.1980), for example, the Iowa Superintendent of Public Instruction was held to be an em-

ployee of the State Board of Public Instruction, Iowa's state educational agency, and thus unable to serve as hearing officer for the single state-level administrative proceeding provided by that state. The Superintendent had there contended that because he was not employed by the local agency, he was not employed by an agency involved in the education of the handicapped child; the court, however, took the view that the state agency was also involved in the education of the child, albeit indirectly. In *Helms, supra,* the court considered it "clear that the State Board [of Education] could not itself conduct the review." 657 F.2d 806 n. 9. And in *Vogel v. School Bd. of Montrose,* 491 F.Supp. 989, 995 (W.D. Mo.1980), the Deputy Commissioner of Education was held to be an employee of the Missouri State Board of Education and as such not allowed to serve as a state-level review officer. The *Vogel* court concluded that:

> Defendants' argument that the State Board of Education is not an 'agency or unit involved in the education or care of the child' pursuant to § 1415(b)(2) because under the Missouri Constitution ... the State Board is charged with "supervision of instruction", is untenable. Acceptance of the State defendants' interpretation would abrogate the intent of the statutory language in § 1415(b)(2) and § 1415(c), which is to ensure impartial review.

491 F.Supp. at 995.

There are two decisions that resolve the issue the other way. In *Brandon E. v. Wisconsin Dep't of Public Instruction,* 595 F.Supp. 740, 746 (E.D.Wisc.1984), the Superintendent of Public Instruction, a constitutional officer of the state, was held not to be considered a school employee under the EHA and not in any way precluded from conducting a review of the initial due process hearing. Similarly, in *Victoria L. by Carol A. v. District School Bd.,* 741 F.2d 369, 374 (11th Cir.1984), the argument that the Florida Commissioner of Education could not review the decision of the

initial local hearing officer was held to be frivolous.[14] We respectfully disagree with these decisions.

In the EHA, Congress has indicated its desire to provide parents with decisionmakers who are not subject to the kind of pressures that employees of an educational agency would necessarily feel. The district court in this case, reasoning that the Secretary "directly exercises both fiscal and regulatory control over the school district and ... is at least involved in the education of handicapped children as were the employees of the Delaware Department of Public Instruction in *Grymes,*" 646 F.Supp. at 283, held that the Secretary of Education must be considered the equivalent of an employee of Pennsylvania's state educational agency for purposes of the EHA. We agree with this reasoning and conclusion.

### 2. *Finality*

■ Muth did not receive a final decision until October 24, 1984, over a year after the School District received his request for a due process hearing (June 20, 1983) and the initial hearing was held (September 30, 1983). The main reason for this delay was the Secretary's use of the remand procedure; rather than affirming or rejecting Trent's first decision in an appealable final order, the Secretary sent it back for another half year of proceedings. Additional time then slipped away during Muth's second appeal to the Secretary. Yet the Secretary argues that the remand procedure, since it is not specifically prohibited by federal law, is permissible.

While in many contexts the power to remand is inherent in the concept of appellate review, in the context of the EHA a remand following an "impartial review" is fundamentally inconsistent with the statutory scheme. As we have earlier noted, the EHA and its implementing regulations reflect the importance not only of procedural protections but also of prompt resolution of disputes over the proper education of a

**14.** The Tenth Circuit, in *Cain v. Yukon Public Schools,* 775 F.2d 15, 20 (10th Cir.1985), noted the conflict between *Grymes* and *Helms* on the one hand and *Victoria L.* on the other, but did not address the issue as it had only been raised on appeal.

handicapped child. Section 300.512 of the regulations, for example, imposes a stringent timetable that, absent reasonable requests for continuances, guarantees an administratively final and judicially reviewable decision no later than 75 days from the date of receipt of the request for a due process hearing. With respect to the "impartial review" proceedings, § 300.512(b) specifically requires the state agency to "insure ... [that] a *final* decision is reached in the review" within 30 days of receipt of the request for a review. (Emphasis supplied). The Secretary clearly violated this regulation by sending the case back to the due process hearing officer for further proceedings rather than entering an appealable final decision. If the Act contemplated such action in this context, we are confident that § 300.512 would have provided some time limitation on remand proceedings. In the absence of such a limitation we are unwilling to eviscerate the protection § 300.512 does afford by sanctioning the Secretary's action.

### 3. *Pennsylvania's scheme for hearing and review*

The Secretary argues that the initial hearing is actually a local one because it is "conducted" by the school district, which is the entity that receives a parent's request for a hearing, schedules the hearing, and notifies the parent. Thus, in the Secretary's view, Pennsylvania has opted for a permissible two-tier system consisting of a due process hearing at the local district level and "impartial review" at the state level. Alternatively, the Secretary argues that the federal law does not preclude a state-level hearing and a state-level review, maintaining that the provision for a single state-level decision procedure indicates that the drafters of the EHA felt that further review was not necessary when the initial hearing was conducted at the state level. As to achieving the speed and finality that are the objectives of the EHA, the Secretary argues, it matters little whether there is a local hearing and state-level review or whether there is a state hearing and state-level review. Thus, even if there is a conflict between Pennsylvania's statute and the federal law, the Secretary contends that it is only one of form, not substance, and should be ignored on the ground that states are meant to have flexibility in creating procedures under the EHA.

Muth, supported by amicus curiae Pennsylvania Association for Children and Adults with Learning Disabilities, contends that the initial hearing is conducted by the state because the initial hearing officer, selected by the Secretary, is a state representative; a state-level review of a state-level hearing is impermissible, they argue, because the federal scheme envisions either one decision or two independent decisions at separate levels.

The district court understandably concluded that the decisionmaker was at the heart of the process and that the entity that "hired the hall" and made the other arrangements for the due process hearing was not as important. It read the Pennsylvania Code provisions calling for the Secretary to assign the hearing officer and recognizing a right of parents to "a full hearing before the Secretary or the designee of the Secretary" as indicating that Pennsylvania's due process hearing occurs at the state level. In the district court's view, a system involving two decisions at the state level was in irreconcilable conflict with federal law.

■ If, as the district court suggests at one point based on the written procedures distributed to parents, Pennsylvania treats the due process hearing examiner as a special master who makes recommendations to be accepted or rejected by the Secretary, its procedure clearly violates the federal requirements for a one-tier system since the hearing officer is not the final administrative decisionmaker. *Helms, supra,* 657 F.2d 800, 805 (holding Georgia's provision that state reviewing officer's decision could be accepted or rejected by Georgia Board of Education violative of federal finality requirement). If, as the district court apparently concluded, the Pennsylvania system is more accurately described as a two-tier system consisting of a state-level due process hearing following by a state-level impartial review, there would appear to be

a formal inconsistency with the federally required scheme even if the Secretary were not involved as a decisionmaker. Nevertheless, we would hesitate to invalidate the result of the Pennsylvania process solely on that ground since states are permitted under the federal scheme to create a process taking up the time necessary for two tiers of proceedings and since review and decision by truly impartial individuals, by whomever designated, would result in independent decisions and thus would appear to constitute substantial compliance with the federal scheme.

We find it unnecessary, however, either to characterize the Pennsylvania system as a one- or two-tier system or to rule on whether a two-tier system conducted in its entirety on the state level is permissible. Given our holding that the Pennsylvania process afforded in this case violated federal law because of the Secretary's participation and the remand, we must affirm the district court's ultimate conclusion on the issue of compliance with the federal scheme. If our holding is not disturbed by the Supreme Court, this will presumably mean that the Pennsylvania procedures will have to be revised in order for Pennsylvania to remain eligible for EHA funding. However, since there is no reason to believe that Pennsylvania will opt to set up a two-tier system in which both the due process hearing and the impartial review are conducted by state-designated officers, the validity of such a system, for present purposes, is purely hypothetical. Accordingly, we express no opinion on it.

### IV.

The next issue is whether reimbursement for Alexander's 1983–84 tuition at Landmark was properly ordered. In considering this issue we first note that a district court is authorized by 20 U.S.C. § 1415(e)(2) to "grant such relief as the court determines is appropriate." The Supreme Court held in *School Comm. of the Town of Burlington v. Dep't of Educ. of Massachusetts*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), that by empowering the court to grant "appropriate" relief Congress meant to include retroactive reimbursement to parents as an available remedy. In the course of reaching that conclusion, the Court observed:

> The statute directs the court to "grant such relief as [it] determines is appropriate." The ordinary meaning of those words confers broad discretion on the court. The type of relief is not further specified.... Absent other reference, the only possible interpretation is that the relief is to be "appropriate" in light of the purpose of the Act.

471 U.S. at 369, 105 S.Ct. at 2003. The Court concluded its opinion in *Burlington* with the comment that the statute's reference to "appropriate" relief meant that equitable considerations were relevant in fashioning relief under the EHA. *Id.* at 374, 105 S.Ct. at 2005.

Since *Burlington*, several courts of appeal have held that "appropriate" relief is determined by the equities of the case. *See Jenkins v. Florida*, 815 F.2d 629, 631 (11th Cir.1987) ("Whether reimbursement is appropriate, and at what amount, should be determined by balancing the equities of the particular case"); *Alamo Heights Indep. School Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1161 (5th Cir.1986) (stating various factors to be taken into account by district court in determining whether parent entitled to full or partial reimbursement for tuition expenses); *see also McKenzie v. Smith*, 771 F.2d 1527, 1535–36 (D.C.Cir.1985) (listing factors weighed by district court in determining appropriate relief, and upholding that relief as properly granted).

The defendants acknowledge that a local school district, unsheltered by the 11th amendment, may be required to reimburse parents for the out-of-pocket expenses of alternative placement in cases where it is ultimately held that the IEP proposed by the school did not provide a free appropriate public education. They maintain, however, that reimbursement of such expenses is not authorized where the IEP is upheld and the parents prevail only on a claim that they were denied the process required by the EHA. They assert that since the IEP

in this case was ultimately sustained, the alternative placement of Alexander was not justified and the monetary award to Muth, in reality, was not reimbursement but a form of compensatory damages. In support of this contention defendants rely upon the following language from *Burlington*:

[T]he Town repeatedly characterized reimbursement as "damages," but that simply is not the case. Reimbursement merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.

471 U.S. at 370–71, 105 S.Ct. at 2003.

■ While there is case law suggesting that compensatory damages based solely on violations of a parent's procedural rights may be available under the EHA,[15] we find it unnecessary to resolve that issue here. This is not a case in which a parent

was reimbursed for the out-of-pocket expense of alternative placement after rejecting an IEP that would have provided his child with a free appropriate public education during the period for which reimbursement was ordered. In this case, the IEP to which Muth initially objected was found by the due process hearing officer to be inadequate; the process, taking a course not contemplated by the federal model, bogged down for a substantial period of time; and the IEP ultimately found to be acceptable did not even come into existence until May of 1984. While we are mindful of the fact that Muth contributed to the delays in the case, we cannot say that the district court abused its discretion in concluding that alternative placement of Alexander was reasonable[16] and that reimbursement of Muth for the out-of-pocket expense of this alternative placement for the school year 1983–84 was required by equitable considerations.[17]

**15.** In *Hall v. Vance County Bd. of Educ.,* 774 F.2d 629 (4th Cir.1985), for example, a reimbursement award was upheld where the school district had violated the EHA's notice provisions and had failed to develop an appropriate IEP; in the course of reaching its holding, the court said that "under *Rowley,* these failures to meet the [EHA's] procedural requirements are adequate grounds by themselves for holding that the school failed to provide" the child with a free appropriate public education. 774 F.2d at 635. The Fifth Circuit, in *Jackson v. Franklin County School Bd.,* 806 F.2d 623 (5th Cir.1986), concurred, saying:

We agree with the Fourth Circuit in finding that failures to meet the Act's procedural requirements are 'adequate grounds by themselves' for holding that the school failed to provide a free appropriate public education, as mandated by the Act.

806 F.2d at 629 (quoting *Hall*). However, the school in *Jackson* had also failed to provide a substantively appropriate IEP. The *Jackson* court remanded for a determination of the appropriate award, which it said could either be monetary (though no private school tuition had been paid by the parent) or take the form of remedial educational services. It has not yet been held, however, that procedural violations in and of themselves will justify an award of tuition reimbursement where a parent unilaterally decides to place his child in private school during the pendency of the due process proceedings and where the IEP offered by the public school for the period at issue is ultimately determined to be appropriate. *See Scituate School Comm. v. Robert B.,* 620 F.Supp. 1224, 1231–32 n. 2 (D.R.I.1985), *aff'd without opinion* 795 F.2d

77 (1st Cir.1986) ("While grave procedural errors ... may be sufficient to invalidate an IEP on its face, no court has yet had to address the issue").

**16.** The district court explained this decision, in part, as follows:

Under these circumstances, I conclude that the appropriate remedy is reimbursement for one full year of tuition at the Landmark School. If the process had not been delayed by the flaws in the state process, a final decision would have been rendered by the Secretary of Education no later than December 1983 rather than October 1984. Mr. Muth would then have known that his challenge had failed at least at the state level, and he could have reevaluated his decision to place Alexander at Landmark at his own expense.

Memorandum and Order of August 28, 1986, App. at 835.

**17.** The School District claims that the reimbursement award is improper against it because the due process scheme of the state, and not the conduct of the School District, violated Muth's rights. In support of this contention, the School District cites *Rose v. Nebraska,* 748 F.2d 1258, 1264 (8th Cir.1984), *cert. denied* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 50 (1985) (holding no attorneys fee award should be made against school district where plaintiff prevailed because state administrative process conflicted with federal law). In this case, however, the School District is in part responsible for the absence of an appropriate IEP for Alexander during the course of the 1983–84 school year, and thus

### V.

We next address the question, raised on appeal by the Secretary, of whether the 11th amendment to the Constitution bars reimbursement by the state of plaintiff's expenses.[18] This is also an issue of statutory construction requiring plenary review.

The 11th amendment provides that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. As the Secretary correctly points out, the 11th amendment has been consistently interpreted by the Supreme Court to preclude federal court suits against a state by the state's own citizens, *see, e.g., Welch v. State Dep't of Highways and Public Transportation,* —— U.S. ——, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Parden v. Terminal Ry. of Alabama State Docks Dep't,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), and to preclude suits for equitable relief as well as damages, *Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974). For 11th amendment purposes, a suit against a state official in his or her official capacity, as here, is the equivalent of a suit against the state, since the state is the real party in interest. *Edelman, supra,* 415 U.S. at 666–67, 94 S.Ct. at 1357. Accordingly, we are confronted with the issue of whether the 11th amendment bars suits against a state in a federal court under the EHA.

Section 5 of the 14th amendment authorizes Congress to enforce the provisions of that amendment by "appropriate legislation." Utilizing this authority, Congress may abrogate the immunity from federal court suits bestowed on the states by the 11th amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). However, if Congress chooses to override 11th amendment rights, it must make its intentions clear. The Supreme Court has admonished that federal courts must "be certain of Congress' intent before finding that federal law overrides the guarantees of the Eleventh Amendment." *Scanlon, supra,* 473 U.S. at 243, 105 S.Ct. at 3147. So that immunity will prevail in the absence of a conscious congressional decision that it must be sacrificed to preserve 14th amendment values, the Supreme Court has declared that "Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." *Id.* While the text of the federal legislation must bear evidence of such an intention, the legislative history may still be used as a resource in determining whether Congress's intention to lift the bar has been made sufficiently manifest. *United States v. Union Gas Co.,* 832 F.2d 1343, 1349–50 (3d Cir.1987).

The text of EHA and its legislative history leave no doubt that Congress intended to abrogate the 11th amendment immunity of the states. In the preamble of the Act, Congress declared it necessary to exercise its rights under § 5 of the 14th amendment in order to assure equal protection of the law for handicapped children. Thus in § 1400(b)(9), Congress expressly "finds that ... it is in the national interest that the Federal government assist State and local efforts to provide programs to meet the educational needs of handicapped children in order to assure equal protection of the law."

The EHA then goes on to establish a national minimum standard for the education of handicapped children and to set

---

must remain jointly and severally liable with the Secretary.

**18.** As the 11th amendment claim is "in the nature of a jurisdictional bar", it may be raised

and considered on appeal. *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed. 2d 662 (1974); *see also Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1036 (7th Cir.1987).

up a detailed process for identifying handicapped children and ascertaining what the federal standard requires in each individual case. The state educational agency is responsible under the EHA to see that this process is successfully implemented. Moreover, if for any reason a local educational agency is unwilling or unable to provide a handicapped child with a "free appropriate public education," the state agency is required to step in and provide that education by contract or otherwise. §§ 1411(c)(4), 1413(b), 1414(d); 34 C.F.R. § 300.360. Most importantly, the EHA not only confers substantive and procedural rights upon handicapped children and their parents vis-a-vis the state educational agency, it bestows upon them the right to seek judicial enforcement of those rights in a federal or state court. Section 1415(e)(2) provides that

> any party aggrieved by the findings and decision [made in the administrative process] shall have the right to bring a civil action ... in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

Because the EHA and its legislative history reflect the "most basic of political knowledge that free public education is provided by and under the aegis of the states," the Court of Appeals for the First Circuit concluded in *David D. v. Dartmouth School Comm.*, 775 F.2d 411, 422 (1st Cir.1985), that Congress clearly contemplated litigation under the Act against a state in the federal courts. We find its reasoning compelling:

> Under the federal Act and its implementing regulations, the State educational agency promises to ensure that it and its local educational agencies will provide at minimum a free appropriate public education. Part of these guaranteed rights is the due process complaint and hearing system which is to take cognizance of *"any matter* relating to" a disabled child's education or procedural rights. The culmination of the state administrative appeals process is the right of any party "aggrieved" by the decision or procedure employed to take the mat-

ter to either state or federal court. § 1415(e)(2). Obviously, since the state is responsible for guaranteeing that a child will receive both the substantive and procedural rights set forth in the Act, Congress intended that the State should be named as an opposing party, if not the sole party, to the proceeding. The legislative history reinforces this view. *See supra* at 13 (primary author of bill stated: "In addition, it should be clear that a parent or guardian *may present a complaint alleging that a State* or local educational agency has refused to provide services to which a child may be entitled or alleging that the *State* or local educational agency has erroneously classified a child ...").

*Id.*

After the decision in *David D.*, Congress amended § 1415(e) to provide for counsel fee awards under specified circumstances. In that 1986 amendment, Congress expressly noted its understanding that suits in the federal or state courts under § 1415(e) necessarily involve "the State or local educational agency" as a party. 20 U.S.C. § 1415(e)(4)(G).

Although a number of other courts of appeal have held that the EHA does not abrogate 11th amendment immunity, none have articulated a rationale as persuasive as that of the First Circuit and none have reached this result after the 1986 amendment to the EHA. *See Gary A. v. New Trier High School Dist.*, 796 F.2d 940, 943–44 (7th Cir.1986); *Miener v. Missouri*, 673 F.2d 969, 980–82 (8th Cir.1982), *cert. denied* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); *Rose v. Nebraska*, 748 F.2d 1258, 1262 (8th Cir.1984), *cert. denied sub nom. Lutjeharms v. Rose*, 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 50 (1985); *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1493–94 (9th Cir.1986), *later proceeding* 795 F.2d 787, *cert. granted in part sub nom. Honig v. Doe*, — U.S. —, 108 S.Ct. 592, 98 L.Ed.2d 686 (1987) (not on 11th amendment issue).

We now join the Court of Appeals for the First Circuit in holding that the EHA authorizes suits against states in a federal

court. Since the "jurisdictional bar [of the 11th Amendment] applies regardless of the nature of the relief sought," *Pennhurst, supra,* 465 U.S. at 100, 104 S.Ct. at 908, and there is thus no distinction to be made between actions for injunctive relief and for damages in the context of an EHA suit against a state agency, we hold that Congress, in authorizing such suits, must have contemplated that tuition reimbursement judgments like the one here entered against Pennsylvania would be a part of § 1415(e) litigation.

### VI.

■ The final question before us concerns the award of attorneys' fees to Muth, which we review for abuse of discretion. *Lindy Bros. Builders, Inc. v. American Radiator & Sanitary Corp.,* 487 F.2d 161, 166 (3d Cir.1973). The award originally made included only fees incurred in connection with the due process issue, on which plaintiff prevailed by summary judgment. This award was modified shortly thereafter to include fees incurred in litigating the merits of the issue of the appropriateness of the 1983–84 IEP. In its final decision on the issue, the district court recognized that the procedural challenge on which Muth prevailed was entirely distinct, factually and legally, from Muth's substantive claims on the merits of the 1983–84 IEP and the 1986–87 proposed IEP. Because the court had deferred its decision on reimbursement, however, it found that Muth was entitled to recover some of the costs he incurred in litigating the merits, explaining:

> at the time the plaintiff moved for summary judgment, defendants opposed the award of tuition reimbursement, and it was not clear to me that reimbursement would be appropriate. I therefore deferred my decision on a remedy for the procedural violation until I was able to determine the appropriateness of the proposed I.E.P.'s. Thus, the plaintiff was required to litigate the merits of the pro-

posed 1983–84 I.E.P. in order to win tuition reimbursement for that school year. Because the court in June considered the issues to be interrelated, the plaintiff was forced to incur additional attorney's fees. It would be unfair to penalize the plaintiff by applying hindsight to determine that the two issues had no common nexus of fact or law.

Memorandum and order of February 20, 1987, App. at 884.

An award of attorneys' fees in an EHA action is allowable under the Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, § 2, codified at 20 U.S.C. § 1415(e)(4)(B), when the plaintiff is the prevailing party.[19] The governing standard for determining awards to partially prevailing plaintiffs is set by *Hensley v. Eckerhart,* 461 U.S. 424, 433, 440, 103 S.Ct. 1933, 1939, 1943, 76 L.Ed.2d 40 (1983), which provides that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."

We find the trial court's final decision unacceptable given the teachings of *Hensley.* Muth prevailed only on his procedural claims, and any award for attorneys' fees beyond those incurred in addressing that issue is an abuse of discretion. Accordingly, we remand for an allocation of attorneys' fees in accordance with the principles of *Hensley.*

### VII.

For the reasons set forth above, we will affirm the judgment of the district court on every issue save that of the award of attorneys' fees, on which we will remand for a determination consistent with this opinion. Each Party to bear its own costs.

---

**19.** 20 U.S.C. § 1415(e)(4)(B) reads:
> In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys fees as part

of the costs to the parent or guardian of a handicapped child or youth who is the prevailing party.