Michael DeVRIES, a minor, by his parent and next friend, Marjorie A. DeBLAAY, Plaintiff–Appellant,

and

Marjorie A. DeBlaay, Plaintiff,

v.

Robert SPILLANE, individually and in his capacity as superintendent of Fairfax County Public Schools; Fairfax County Public Schools; Fairfax County Board of Education Members, individually and in their capacity as a member of the Fairfax County School Board; John Davis, individually and in his capacity as Superintendent; Virginia Department of Education; Virginia State Board of Education Members, individually and in their capacity as members of the Board, Defendants–Appellees,

and

Leary School Incorporated; Albert D. Leary, Jr., individually and in his capacity as Executive Director of Leary School, Defendants.

No. 88–1506.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1988.

Decided Aug. 8, 1988.

Timothy M. Cook, Los Angeles, Cal., (Frank J. Laski, Lisa M. Rau, The Public Interest Law Center of Philadelphia, Philadelphia, Pa., on brief) for appellant.

Grady K. Carlson (Thomas J. Cawley, John F. Cafferky, Hunton & Williams, Fairfax, Va., on brief), Kimberly S. Ritchie, Asst. Atty. Gen. (Mary Sue Terry, Atty.

Gen., Joan W. Murphy, Asst. Atty. Gen. on brief) for appellees.

Before WINTER, Chief Judge, and MURNAGHAN and ERVIN, Circuit Judges.

MURNAGHAN, Circuit Judge:

The Leary School located in Alexandria, Virginia, was attended by the plaintiff, Michael DeVries, at public expense during the school year 1985–86. Leary is a private special education school. That was by agreement of his mother, Marjorie De-Blaay, and school officials. During the summer of 1986, several meetings were held for the purpose of developing an individualized education program (IEP) for Michael for the 1986–87 school year. His mother insisted that Michael attend his neighborhood public school, Annandale High School, with the school providing whatever special arrangements were necessary for his education. The school system declined to meet DeBlaay's request and indicated that it would continue his education at Leary. DeBlaay initiated an administrative hearing. Following a four day hearing, an independent administrative hearing officer concluded on November 11, 1986, that the school system's offer to continue Michael's program at Leary was appropriate.

DeBlaay appealed the decision to a second independent administrative hearing officer, known as a "state reviewing officer." The state reviewing officer affirmed the initial decision approving the school system's offer of the Leary program in a written opinion dated March 5, 1987.

While the second administrative proceeding was pending before the state reviewing officer, school personnel began attempts in January of 1987 to meet with DeBlaay in order to plan Michael's education for the 1987–1988 school year.[1] DeBlaay and the school officials did not meet until July 31, 1987. Because no consensus was reached at that meeting, a second IEP meeting was held on August 30, 1987.

Both meetings were attended by De-Blaay, her attorney, school system officials and representatives of Leary. During the course of the meetings, Leary staff and school system personnel concluded that Michael had progressed to the point where he could adequately be served in the specially designed South County program of West Potomac High School, a public school located in Fairfax County.

DeBlaay rejected the offer of the South County program, but did not initiate an administrative hearing to challenge that proposed placement. Instead, she insisted that Michael remain at Leary pending the outcome of the present litigation that she had commenced in the district court on May 4, 1987, seeking to overturn the administrative decisions in favor of the school system's prior offer of the Leary program.

At trial, DeBlaay conceded that virtually none of the evidence she intended to present was related to the issue which had been the focus of the administrative proceedings, viz., whether the School Board's offer of the Leary program constituted an appropriate education for Michael. Indeed, DeBlaay advised the district court that she no longer sought review of the appropriateness of the Leary program. The district court then declined to hear evidence concerning DeBlaay's new complaint regarding the South County program, since that had not been the subject of the administrative proceedings.

On its own motion, the district court dismissed the action, finding that DeBlaay had failed to exhaust administrative remedies with respect to the issue upon which she now sought judicial review: viz., whether the school system's offer of the South County program constituted an "appropriate" education for Michael.

Following and in accordance with the district court's ruling from the bench, De-Blaay initiated by letter dated November 25, 1987, an administrative hearing to challenge the school system's offer of the South County program. After a two day

---

1. The special education laws require that extensive efforts be made to involve parents in IEP meetings and decisions. 34 C.F.R. § 300.345. Further, a handicapped child's educational program and placement must be reviewed at least annually. 34 C.F.R. § 300.552(a).

hearing, another independent administrative hearing officer ruled on January 21, 1988 in favor of the school system. DeBlaay appealed to a state reviewing officer who, following a review of the record, affirmed the decision of the first hearing officer on February 25, 1988. DeBlaay appealed those decisions regarding the South County program to the district court on March 30, 1988.

While the most recent administrative proceedings were pending, the district court, relying on failure to exhaust grounds, issued its memorandum opinion and order on December 14, 1987, 674 F.Supp. 1219, and DeBlaay appealed to this Court.

■ At the outset we conclude that the district court improperly dismissed the complaint. Reexhaustion is not required. DeBlaay's complaint, that Michael be instructed at Annandale, his neighborhood school, remains unaffected by the new IEP. Further, to the extent that factual findings are required to be made regarding the new IEP, the district court is directed, by statute, to do so.

As to whether the defendants were improperly dismissed, the federal statute creates duties on the part of the state and state officials. The Education of the Handicapped Act (EHA), 20 U.S.C. §§ 1401 to 1462, establishes a comprehensive system of procedural safeguards designed to provide meaningful parental participation in all aspects of a disabled child's educational placement. It confers upon disabled students an enforceable substantive right to public education in states such as Virginia that seek federal funding assistance under the EHA. *Honig v. Doe,* — U.S. —, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). States must develop policies assuring all disabled children the "right to a free appropriate public education" and "to the maximum extent appropriate ... mainstream ... disabled children." *Id.* 108 S.Ct. at 597. That is, states must educate disabled children, to the maximum extent possible, with children who are not disabled, and states may segregate or otherwise remove disabled children from the regular classroom setting "only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids

and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(5).

The primary vehicle for implementing the EHA goals is the IEP. The EHA mandates the creation of an IEP. The IEP is prepared at meetings between a representative of the local school district, the child's teacher, the child's parent or guardian, and the disabled child. The IEP must be reviewed annually to tailor the required "free appropriate public education" to each child's unique needs.

Congress, when it passed the EHA, was aware that schools had all too often denied disabled children appropriate education without consulting their parents. S.Rep. No. 168, 94th Cong., 1st Sess. 3–4, *reprinted in* 1975 U.S.Code Cong. & Admin.News 1425, 1427–28. Congress repeatedly emphasized, in the EHA, the necessity of parental participation. Accordingly, the EHA establishes procedural safeguards to guarantee meaningful parental input. The safeguards include the right to examine records, prior written notice of changes (or refusals to change) the IEP, opportunity to present complaints and an opportunity for "an impartial due process hearing" with respect to any complaints. 20 U.S.C. § 1415(b)(1). Following the due process hearing both the parents and the local educational agency may seek further administrative review. Following that review, either may file a civil action in a state or federal court. The scope of the trial court's review is broader than the usual review of administrative decisions. In addition to the administrative record, a court "shall hear additional evidence at the request of a party" and "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2).

The above described process was carried to completion in all its stages in the present case. At the reviewing court level, the federal district judge dismissed the case for failure to exhaust administrative remedies. He based his decision on the fact that the IEP for which administrative proceedings had been conducted was not the IEP that was before him. The change was brought about by the School Board's decision to change Michael's IEP after the administrative process was concluded but before the

federal court action was tried. The district court required reexhaustion of the administrative remedies as to the new IEP.

We hold that the district court is in error for two reasons. First, since the scope of the district court's review under the EHA is more broad than that generally existent under review of administrative decisions, the need for exhaustion is not as clear as in the normal case of review of administrative decisions. Second, even under normal exhaustion rules, the plaintiff does not need to reexhaust. Plaintiff's claim, that he be educated at the neighborhood school, Annandale, that he would attend were he not disabled,[2] is not affected by creation of the new IEP involving yet another school.[3] The new IEP continues to provide for plaintiff's schooling at a place other than Annandale. Thus, the complaint of plaintiff, before the administrative tribunals, is the same as that before the district court, namely, that he be educated at Annandale.

It is true that the new IEP is different from the old so that the factual findings of the administrative tribunals made as to the earlier IEP are not precisely pertinent to the new IEP. Classically, that is a reason for reexhaustion which essentially is the equivalent of a remand. However, the EHA provides for a different result. The district court under the EHA "shall hear additional evidence at the request of a party." The Third Circuit has recognized that a remand is inconsistent with that statutory scheme. *Muth v. Smith,* 646 F.Supp. 280 (E.D.Pa.1986), *aff'd in part remanded in part* (solely for calculation of attorney's fees) *sub nom. Muth v. Central Bucks School District,* 839 F.2d 113 (3d Cir.1988). So, too, is reexhaustion inconsistent with the statutory scheme when the complaint remains the same though the IEPs change.

As for the district court dismissal as defendants of the state education agency, the state education officials and the school district officials, we see no reason for addressing the issue of whether that was proper. The Supreme Court has stated that "the EHA confers upon disabled students an enforceable substantive right to public education in participating States and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Honig,* 108 S.Ct. at 597. The state and local education officials argue that the obligations of federal law run solely to the agencies themselves and not to the officials who head them. But in *Burlington School Committee v. Massachusetts Dep't. of Educ.,* 471 U.S. 359, 373, 105 S.Ct. 1996, 2004, 85 L.Ed.2d 385 (1985), the Court acknowledged that parents could under the EHA obtain injunctive relief against "school officials" and in *Honig* the Court indicated that the converse was true, that "school officials are entitled to seek injunctive relief." The EHA places specific obligations upon the individual school officials, and they might be made to answer for them. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1907).

Also, there is respectable authority to the effect that the state agency was also properly named as a defendant. Under the EHA, the state has an obligation to a disabled student. Since the statute creates a duty, the student apparently can challenge the state for breaching that duty. *Watt v. Energy Action Educ. Found.,* 454 U.S. 151, 161, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981).

However, the case will proceed against an adequate defendant, the Fairfax County School Board, so far as affording Michael an adequate forum for adjudicating his claims. We then leave undisturbed the district court's dismissal of the state education agency, the state education officials and school district officials. Further, while the dismissed individual defendants additionally argue that the complaint should be dismissed as to them for its failure to state a claim, for reasons given above, that contention, which was not addressed by the district court, fails.

■ Shortly prior to oral argument, appellants moved for summary reversal and appellees moved for dismissal of the ap-

---

**2.** That fact is, on the record, undisputed.

**3.** The merits of plaintiff's claim need not be considered when considering whether reexhaustion is necessary. We need only look at the claim and how it is unchanged by the creation of a new IEP.

peal. We deferred decision on both motions pending oral argument. Following oral argument we decided to decide the case in an opinion, and therefore denied the motion for summary reversal. The motion to dismiss was made on mootness grounds. Appellees argued that the case was moot because the IEP upon which plaintiff sued had been superseded by another IEP. *See supra* at 265–66. We find that the case is not moot because "the conduct complained of is 'capable of repetition, yet evading review.'" *Honig,* 108 S.Ct. at 601 (quoting *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)). *Honig* made clear that EHA cases are classic cases for application of the "capable of repetition, yet evading review" rule.

REVERSED AND REMANDED.