LOUIS M., a minor, by his mother, VELMA M.; Louis T., a minor by his father, Louis T.; and Patricia S., a minor, by her mother, Barbara S., on behalf of themselves and all others similarly situated, United Cerebral Palsy of New York City, Inc. and The Herbert G. Birch School, Plaintiffs,

v.

Gordon M. AMBACH, individually and as Commissioner of Education of the State of New York, Defendant.

No. 86–CV–919.

United States District Court, N.D. New York.

June 15, 1989.

Rebell & Katzive, Attorneys for Plaintiffs, New York City, for plaintiffs; Marion C. Katzive, Michael A. Rebell, of counsel.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y., for defendant; Lawrence H. Doolittle, Asst. Atty. Gen., of counsel.

## MEMORANDUM–DECISION AND ORDER

CHOLAKIS, District Judge.

This action is brought pursuant to 28 U.S.C. §§ 2201 & 2202 (1982 and Supp. 1986) and 42 U.S.C. § 1983, on behalf of handicapped children throughout New York State, challenging the procedures utilized by the State in securing appropriate placement for these children within New York's education system. Plaintiffs allege the procedures currently utilized for placing these children violate the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq.* (E.H.A.), and the childrens' constitutional rights. Because this action can be resolved on the basis of statutory interpretation, the constitutional issues will not be addressed.

Plaintiffs currently challenge the appellate procedures available under New York law for reviewing non-public school placements. By order of this court, class certification was granted in this action, consisting of the following class:

> All handicapped individuals age 5 to 21 who are residents of New York State and entitled to an education as defined in 20 U.S.C. § 1401(18) for whom appropriate

special education is not currently available in their local public school districts and who either

(a) are presently not receiving free appropriate education and would be able to receive such appropriate education at non-public facilities; or

(b) are currently receiving an appropriate education in non-public facilities at public expense but are at risk of being denied such education because of defendant's actions.

*Louis M. v. Ambach,* 113 F.R.D. 133 (N.D. N.Y.1986).

Presently before the Court are plaintiffs' and defendant's cross-motions for summary judgment.

The E.H.A. was established to assure that all handicapped children receive a free appropriate public education. 20 U.S.C. § 1400(c). It is essential, in order to qualify for federal funds, that the local educational agency establish Individualized Educational Programs (IEPs), as defined in 20 U.S.C. § 1401(a)(19), tailored to meet the specific needs of each child. 20 U.S.C. § 1414(a)(5). "The E.H.A. requires that handicapped children in private placements have the same rights as those handicapped students placed in facilities of the state." *Antkowiak v. Ambach,* 838 F.2d 635, 640 (2d Cir.1988). The EHA further requires that each state establish certain procedural safeguards within the placement process, as set forth in 20 U.S.C. § 1415. Such procedures include providing parents with notice of any change in the educational plan of their child, the opportunity to file a complaint which will be resolved at an impartial hearing, an opportunity to appeal the outcome of the impartial hearing to the State Educational agency, and an opportunity to bring an action in State court or United States district court if dissatisfied with the decision of the state education agency. 20 U.S.C. § 1415(b)–(e). "Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, as it did upon the measurement of the resulting I.E.P. against a substantive standard." *Board of Education v. Rowley,* 458 U.S. 176, 205–06, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982).

Within the review procedures of the E.H.A., there are specific avenues of appeal available to a complainant. The E.H.A. authorizes the states to select either a one or two-tier system for review of placement decisions. In particular, 20 U.S.C. § 1415(b)(2) provides:

Whenever a complaint has been received under paragraph (1) of this subsection [regarding placement], the parents or guardian shall have an opportunity for an impartial due process hearing *which shall be conducted by the State Educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency.* No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child. (emphasis added).

The E.H.A. further provides that decisions of the local educational agency are to be reviewed by the State educational agency:

If the hearing required in paragraph (2) of subsection (b) of this section is conducted by a local educational agency or an intermediate educational unit, any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State's educational agency which shall conduct an impartial review of such hearing. The officer conducting such review shall make an independent decision upon completion of such review.

20 U.S.C. § 1415(c).

The intent of 20 U.S.C. § 1415(b)(2) and (c) is to insure the availability of impartial review for all placement decisions. Section 1415(b)(2) specifically forbids any employee of such agency or unit involved in the education or care of the child, to act as the *due process hearing officer.* The Senate Congressional Report demonstrates Congress' intent that these hearings be impartial, and that individuals conducting review of the placements be as free from

political and fiscal pressures as possible at both the local and state levels. 1975 U.S. Code Cong. & Admin.News, 94th Cong. First Session, pp. 1425, 1502. An impartial hearing officer must be selected by the relevant educational agency or unit to conduct the impartial due process hearing. Under the E.H.A. the decision of this hearing officer is a final, and therefore appealable order. *Helms v. McDaniel*, 657 F.2d 800, 805 (5th Cir.1981), *cert. denied*, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982); *Anita Stark v. Franklin Walter*, No. C–2–83–1331 (S.D.Ohio Sept. 11, 1984) 1984–85 EHLR Dec. 556:203. A decision rendered by the local educational unit under 20 U.S.C. § 1415(b)(2) is appealable under § 1415(c). The decision under 1415(c), or a decision by the State agency under § 1415(b), is appealable in a State court of competent jurisdiction or in a district court of the United States. 20 U.S.C. § 1415(e). "Thus, although the Act leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, it imposes significant requirements to be followed in the discharge of that responsibility." *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 183, 102 S.Ct. 3034, 3039, 73 L.Ed.2d 690 (1982).

New York Education Law provides the following procedure for those children who are unable to achieve a basic education within the public school system—the Commission on the Handicapped (COH) for the school district in which that child resides may, upon notice to the child's parent or guardian, make a recommendation to the school district's board of education (BOE) for the child's education in a private placement. N.Y.Educ.L. § 4402(3) (McKinney 1988 Supp.). The parent may seek review of the placement decision by appealing to the BOE, who will appoint an independent hearing officer from its list. N.Y.Educ.L. § 4404(1). "An appeal to the commissioner of education will lie from any determination of the board of education." *Id.*

In those instances where the determination of the hearing officer may be appealed to the Commissioner of Education, "[t]he commissioner shall review and may modify, in such cases and to the extent that the commissioner deems necessary, ... any determination of the impartial hearing officer ... and require [the BOE] to comply with the provisions of such modification ..." N.Y.Educ.L. § 4404(2). This review is delegated by the commissioner to "regional associates" (RAs), who decide whether to accept, reject or remand the decision of the BOE. The decision of the commissioner is subject to limited review by a judicial proceeding brought pursuant to Article 78 of the New York Civil Practice Law and Rules. N.Y.Educ.L. § 4404(3). Children are to remain in their then current placement during the appellate process. N.Y. Educ.L. § 4404(4).

Plaintiffs assert that New York State's review process, and in particular the review of the hearing officer's decision by the RAs and the lack of parental input in that phase of the review, violates the E.H.A. Plaintiffs further assert that the procedure set up by the State of New York results in substantial delays in the placement of these children, again violating the E.H.A. Finally plaintiffs allege that defendant makes placement decisions based on a single handicapping condition, and terminates placements during the appellate process, both in violation of the E.H.A. Plaintiffs currently seek partial summary judgment on the first six claims of their complaint, and a preliminary injunction requiring defendant to establish fair and appropriate procedures consistent with the requirements of the E.H.A. for placement in nonpublic facilities of children whose needs cannot be met within the public schools. Plaintiffs maintain that even if the procedures set forth in New York's Education Law technically comply with the E.H.A., the Department of Education's implementation of these procedures violates plaintiffs' rights under the E.H.A. and the Constitution of the United States.

Defendant opposes summary judgment and contends that the RAs are not responsible for initiating placements, but merely monitor the local education agencies (LEAs) to assure they are in compliance

with the E.H.A.[1] Defendant alleges that plaintiffs have not established that any rights of any child have been violated by the defendant's actions. Defendant further asserts that the State Education Department is complying with the mandates of the E.H.A. and that defendant should obtain summary judgment in his favor as the actions of the State are not the cause of the delays complained of in this action. Defendant contends that the procedures utilized for placement of these children fall within the requirements of the E.H.A. as a matter of law, and actually result in greater compliance with the requirements of the E.H.A. by the various LEAs.

Defendant further disputes plaintiffs' assertion that there is no parental input into the decision making process. Defendant maintains that any parent who wishes to challenge the placement of a child may do so under 20 U.S.C. § 1415, N.Y.Educ.L. § 4404, and the state regulations, 8 N.Y.C.R.R. § 200.01, *et seq.* (1986), all of which provide for judicial review of any final decision of the commissioner. Conceding that the purpose of the E.H.A. is to assure an appropriate free education to all handicapped children, defendant maintains that the role of the RAs in this process is to review the school districts written records as to the appropriate placement for these children. When placement is in a nonpublic school, defendant asserts it is the review performed by the RA which insures that this is indeed the least restrictive environment in which a particular child can receive an appropriate education as defined in 8 N.Y.C.R.R. 200.1(t). *See* Affidavit of Hannah Fleggenheimer submitted in opposition to the Motion for Summary Judgment. Defendant maintains that the process provides for sufficient parental input through the options of written commentary if the parent so desires, or an impartial hearing

upon request. Defendant further asserts that review by the RAs is often in actuality an administrative appeal from the impartial hearing pursuant to 20 U.S.C. § 1415(c), and as such complies with the E.H.A., which does not require a duplication of the hearing process conducted by the BOE. *See,* 34 C.F.R. § 300.510 (1988). Additionally, the procedures under New York law require that a copy of the decision of the RA be mailed to the parent. 8 N.Y.C.R.R. § 200.5(d). Defendant contends that, while individual cases of violations by the RAs are a matter to be remedied, the procedure itself is within the confines of the E.H.A.

▪ The legislative history of the E.H.A., as well as the statute itself, 20 U.S.C. § 1415(c), indicates that Congress supports second level review of the decisions of the local board. 1975 U.S.Code Cong. & Admin.News, 94th Cong.First Session, at 1500. *See also,* N.Y.Educ.L. § 4404(2)[2]. The question thus becomes whether New York State, in setting up a system of review for the decision of the local COH, has exceeded the level of permissible review authorized by the E.H.A. Two Courts have indicated that the provisions of § 1415(b)(2) prohibit an employee of the school district from conducting a due process impartial hearing, but concluded that § 1415(c)'s providing for administrative appeal to the State Educational agency negates any argument that such a review by an officer of that agency constitutes a violation of the E.H.A. *Victoria L. by Carol A. v. District School Board,* 741 F.2d 369, 374 (11th Cir.1984), *Brandon E. v. Wisconsin Dep't. of Public Instruction,* 595 F.Supp. 740, 746 (E.D.Wis.1984). This Court, in following the precedent set by the Second Circuit in this area, respectfully disagrees. *See, Burr by Burr v. Ambach,* 863 F.2d 1071 (2d Cir.1988).

---

**1.** Defendant also opposes summary judgment asserting that plaintiffs, by utilizing attorney's affidavits, have failed to meet their burden of coming forward with proof in proper evidentiary form as to the validity of their claims and their right to prevail upon them. This Court finds this argument frivolous in light of the extensive documentation in support of the current motion, and the fact that both parties agreed to the utilization of all discovery in the

companion case of *Andrew H. v. Ambach,* 600 F.Supp. 1271 (N.D.N.Y.1984), in determining this motion.

**2.** The Second Circuit has expressed doubt as to the propriety of the Commissioner's sua sponte review under New York law. *Antkowiak v. Ambach,* 838 F.2d 635, 641 (2d Cir.1988).

State Board of Education employees are clearly precluded from acting as review officers at the impartial hearing level of § 1415(b)(2). *Grymes v. Madden,* 672 F.2d 321, 323 (3d Cir.1982). In amending the due process provisions of the E.H.A. Congress intended to "clarify that the impartial due process hearing is not to be conducted by an employee of the State or local educational agency directly involved in the education or care of the child ..." 1975 U.S.Code Cong. & Admin.News, 94th Cong., First Session, p. 1453. Even though the State Board of Education may be charged with supervising the instruction of children, the Commissioner, as an employee of the state board of education,[3] is clearly not an impartial hearing officer within the confines of § 1415(b)(2). *See Robert M. v. Benton,* 634 F.2d 1139 (8th Cir.1980) (Iowa's Superintendent of Public Instruction may not serve as due process hearing officer). Thus, if the RAs were performing the function of an impartial hearing officer under § 1415(b) the E.H.A. would be violated. However, defendant asserts the RAs actually perform the level of review set forth in 20 U.S.C. § 1415(c).

Under § 1415(c), the review to be conducted by the state agency must be "impartial," and an "independent decision" reached as to the propriety of private placements. The Conference Committee on the E.H.A., in its Joint Explanatory Report states: "... any hearings are not conducted by the agency itself, but rather at the appropriate agency level ... [indicative of] ... the minimum standard of impartiality which shall apply to individuals conducting due process hearings *and* individuals conducting a review of the local due process hearings." 1975 U.S.Code Cong. & Admin. News, 94th Cong. First Session, 1425, p. 1502 (emphasis added). Thus review conducted under § 1415(c) carries the same limitations as § 1415(b). *Muth v. Central Bucks School Dist.,* 839 F.2d 113, 123 (3d Cir.1988) *cert. granted sub nom, Gilhool*

*v. Muth,* —— U.S. ——, 109 S.Ct. 52, 102 L.Ed.2d 30 (1988); *Colin K. by John K. v. Schmidt,* 715 F.2d 1, 5 n. 3 (1st Cir.1983).

Defendant maintains that the review conducted by the RAs is the equivalent of an administrative appeal of the hearing officer's decision, and therefor acceptable under the E.H.A.. It is the RAs role, however, that is the crux of plaintiffs' complaint. If the hearing officer's role is reduced to that of a special master, whose findings and recommendations are subject to review by the RAs, the impartiality required by the E.H.A. at that level of review fails. *Russell A. Muth, Jr. v. Margaret A. Smith, Sec. Ed., Pa.,* Civil Action No. 84–2032, 1986 WL 6295 (E.D.Pa. June 3, 1986) 1985–86 EHLR Dec. 557–322, *rev'd and remanded on other grounds, Muth v. Central Bucks School Dist.,* 839 F.2d at 113. In *Burr by Burr v. Ambach,* 863 F.2d 1071 (2d Cir.1988), the Second Circuit specifically held that the Commissioner (and by inference, his delegate) cannot meet the impartiality requirements of § 1415(c) due to his extensive involvement in the school system. *Id.,* at 1077. Although defendant did not have the advantage of the Court's decision in *Burr* at the time this motion was argued, he has failed to adequately address plaintiffs' claim that the review as conducted by the RAs is a usurpation of the role of the impartial hearing officers, and not a part of the administrative review process. The fact that the defendant is reviewing the necessary paperwork to assure appropriate placement of handicapped children avoids the issue of the propriety of this type of review. The explanation offered by defendant as to the role of the RA in reviewing the determinations of the BOE, fails to bring that role within the strictures of the E.H.A..

The Commissioner, or his delegate, functioning *de facto* as an impartial hearing officer deprives applicants of their right to due process under the E.H.A.. *Helms v. McDaniel,* 657 F.2d 800, 806 n. 9

---

3. The regents of The University of the State of New York shall appoint, and at pleasure may remove, the commissioner of education, who is considered to be the administrative officer of the department of education. N.Y.Ed.L. § 101

(McKinney 1988). Various RAs submitted affidavits in opposition to plaintiffs motion for summary judgment, each indicates he/she is an employee of the New York Department of Education.

(5th Cir.1981). *Vogel v. School Board of Montrose R-14 School District,* 491 F.Supp. 989, 995 (W.D.Mo.1980). If the State Commissioner conducts a review of the hearing officer's decision, and this review is not impartial, it is in direct conflict with § 1415(e)'s requirement that the decision of the impartial hearing officer be final unless appealed pursuant to § 1415(c), or in the courts. *Helms v. McDaniel,* 657 F.2d at 805. The Commissioner's unfettered discretion to reject the decision of the impartial hearing officer results in a deprivation of due process. *Burr by Burr v. Ambach,* 863 F.2d at 1077; *Monahan v. State of Nebraska,* 645 F.2d 592 (8th Cir. 1981). Although the State Board of Education is the agency charged with educating children, the commissioner or his delegate, as an employee of that agency within the confines of the E.H.A., is prohibited from being the final arbiter of the status of handicapped children. *Anita Stark v. Franklin Walter,* No. C-2-83-1331 (S.D. Ohio Sept. 11, 1984) 1984-85 EHLR Dec. 556:203.

Plaintiffs are entitled to summary judgment on their claim that the New York procedures which allow the commissioner himself (or the RA as his delegatee) to review the decisions of the impartial hearing officers violates the E.H.A..

## DELAY

 In a related claim, plaintiffs contends that the review process utilized by defendant has delayed many of the plaintiffs' I.E.P. placements in violation of the E.H.A.. Plaintiffs assert that the utilization of the RAs to review the decision of the impartial hearing officers results in numerous delays and remands to the BOEs, and as such is violative of the Congressional directive for expeditious placement.

Defendant contends that the RAs are forcing the B.O.E.s to comply with New York State's requirements concerning documentation and submission of appropriate medical and psychological reports, 8 N.Y.C. R.R. § 200.4(b). Thus, defendant maintains, their activities are justified, and do not violate the provisions of the E.H.A.. He asserts the regulatory process by which the State assures the appropriate placement for each child is not meant to serve as a means of avoiding the State's obligations. Defendant contends that the Department of Education is not responsible for any delay in placements resulting from delays by the local BOEs in providing this documentation.

It is documented in the record that the turnaround time from the RAs is extremely short (an average of seven to ten days), but that fulfilling the resultant documentation requests is the major cause of the delays. *See,* Affidavit of Lawrence Doolittle in opposition to the motion for Summary Judgment. This argument fails to address the issues raised in the complaint. The fact that defendant is reviewing the necessary paperwork to assure appropriate placement of handicapped children avoids the issue of the delay arising from this type of review. Defendant fails to address the need for immediate placement of these children in appropriate educational settings, and the requirements under the E.H.A. that these placements be made expeditiously.

The E.H.A. requires placement of children as quickly as possible, as well as the maintenance of children within their current placement pending final outcome of the appellate process. 20 U.S.C. § 1415(e)(3). The statutory framework of the E.H.A., and its accompanying regulations "reflect the importance not only of procedural protections, but also of prompt resolution of disputes over the proper education of the handicapped child." *Muth v. Central Bucks School Dist.,* 839 F.2d 113, 124-25 (3d Cir.1988). The Commissioner's current utilization of the RAs in effect results in repeated remands, avoiding the congressional directive of expeditious and final resolution of these disputes within the State system.

An even greater problem arises when a child has not yet been placed, as the process currently mandated by defendant postpones that placement indefinitely. It is inconceivable that either the E.H.A. or New York law condones this result. The

delays in the placements of such children are another example of the invalidity of the current system.

As noted above, defendant's practice of remanding placement decisions for further proceedings acts to contravene the intention of the E.H.A. to place these children as quickly as possible. "... [I]n the context of the E.H.A. a remand following 'impartial review' is fundamentally inconsistent with the statutory scheme." *Muth v. Central Bucks School Dist.*, 839 F.2d at 124–25. Plaintiffs are entitled to summary judgment on their claims that the delays inherent in defendant's current appellate system violate the E.H.A..

### LACK of PARENTAL INPUT

■ Plaintiffs also assert that throughout defendant's review of the placement decisions of the LEAs, parental input is virtually nonexistent, which is in direct contravention to the E.H.A. requirements that parents and guardians be an integral part of the placement process. Although defendant contends that a hearing by an impartial officer is always obtainable upon request, Affidavit of Rebecca Cort in Opposition to the Motion for Summary Judgment, defendant does not provide any competent evidence to show that the RAs are willing to participate in an impartial hearing or to give parents an opportunity to be heard at such hearings. There is substantial evidence in the record to support plaintiffs' assertions that the RAs communicate only with the BOEs in remanding placement decisions and seeking additional documentation.

The E.H.A. requires that parental input and an opportunity to be heard be incorporated into the placement process. 20 U.S.C. § 1415(d). The statute requires such input "because Congress viewed parents and guardians as a necessary check to insure that handicapped children are provided appropriate educational opportunities." *St. Louis Dev. Dis. Center v. Mallory*, 591 F.Supp. 1416, 1439 (W.D.Mo.1984). The lack of parental input at any critical phase of the decision making process violates the requirements of the E.H.A. There is overwhelming evidence in the record that de-

fendants are not adhering to this mandate. Plaintiffs are entitled to summary judgment on their claim that defendant's practices do not allow for parental input at various phases of review, and as such violate the E.H.A.

### TERMINATION OF PLACEMENTS

■ Plaintiff asserts that defendant has a practice of terminating placements during the appellate process in direct violation of the E.H.A.. Defendant however, maintains that placements are only terminated "in those very rare instances when that placement is clearly inconsistent with regulating requirements for placing students into programs with other students who have similar needs." Affidavit of Hannah Flaggenheimer at 3. The Flaggenheimer affidavit also indicates that even in those instances where termination is deemed necessary, the RAs are always willing to consider additional information. *Id.*

Defendant is apparently ignoring the very provisions of the E.H.A. and New York Education Law, which require placements be continued during the review process. *See* 20 U.S.C. § 1415(e)(3); N.Y. Educ.L. § 4404(4).

"[The E.H.A.] ... provided for meaningful parental participation in all aspects of a child's educational placement, and barred schools, through the stay-put provision, from changing that placement over the parent's objection until all review proceedings were completed. Recognizing that those proceedings might prove long and tedious, the Act's drafters did not intend § 1415(e)(3) to operate inflexibly, see 121 Cong.Rec. 37412 (1975) (remarks of Sen. Stafford), and they therefore allowed for interim placements where parents and school officials are able to agree on one."

*Honig v. Doe*, 484 U.S. 305, —— ——, 108 S.Ct. 592, 604–05, 98 L.Ed.2d 686, 707–08 (1988). "The language of § 1415(e)(3) is unequivocal ... [i]t states plainly that during the pendency of any proceedings under the Act, ... 'the child *shall* remain in the then current educational placement.'". *Id.*, 484 U.S. at ——, 108 S.Ct. at 603, 98

L.Ed.2d at 706 (emphasis in original). Emergency situations which may require suspension of a placement are an exception to the necessity of a due process hearing. However, once that temporary suspension assumes a permanent nature, the constraints of the E.H.A. appellate process come into play. *Sherry v. N.Y. State Ed. Dep't.*, 479 F.Supp. 1328, 1338 (W.D.N.Y. 1979). As a general rule, continued funding is required until the due process proceedings required by the E.H.A. are completed. *Grymes v. Madden*, 672 F.2d 321 (3d Cir.1982). Clearly, termination of a placement during the review process violates both New York law and the E.H.A..

However, any failing in this area is not a result of New York's statutory scheme, which specifically requires children be maintained in their placements during the appellate process. New York Ed.L. § 4404(4). In this respect, plaintiffs are entitled to summary judgment on their claim that defendant's practice of terminating placements during the appellate process violates the E.H.A..

## PLACEMENTS BASED ON SINGLE HANDICAPPING CONDITIONS

Plaintiffs assert that defendant makes placement decisions based on a single handicapping condition, in violation of the E.H.A.'s directive that children's placement decisions not be based on a single criteria, so as to avoid dangerous stereotyping. 1975 U.S.Code Cong. & Admin. News, 94th Cong.First Session, at 1471.

The legislative history indicates:

... no single procedure shall be the sole criterion for determining an appropriate educational program for a child ... the Commissioner shall, in carrying out the provisions of this Act, issue, amend, and revoke such rules and regulations as may be necessary and that no other less formal method of implementing the provisions is authorized ... These regulations should assure that: .. no single test or type of test or procedure is used as a sole criterion for placement and that all relevant information with regard to the functional abilities of the child is utilized in the placement determination; and, (3) tests and other evaluation procedures include assessment of special areas of educational need so that provision of special education and related services can be limited to areas directly related to the child's need so that broad and unspecific classifications of handicapping conditions do not occur....

1975 U.S.Code Cong. & Admin.News, 94th Cong., First Session, p. 1453 (re: Amendments to the Due Process Requirements).

Defendant disputes plaintiffs' allegations that placements are made based upon a single criteria. He maintains that the example given by plaintiff, Patricia S., was a placement which was denied on the basis of hearing services not being provided at the recommended facility, and that hearing services were required by her I.E.P.. Since the facility was not certified by the Department of Education to provide this service it was rejected. When her I.E.P. was later modified to exclude a requirement for hearing services, this placement was approved. Defendant notes that if the placement is not providing the recommended services, it cannot be providing an appropriate education within the meaning of the E.H.A.

Defendant notes similar disparities in the records of the other named plaintiffs. In the Affidavit of Rebecca Cort submitted in Opposition to the Motion for Summary Judgment, defendant reviews a placement which provided for inadequate supervision of an aggressive student, Louis M.. This placement was rejected because of prior bad experience with Louis in an even more supervised placement. Cort also stresses the availability of a hearing by making the appropriate request pursuant to N.Y.Educ. L. § 4404 and 20 U.S.C. § 1415. Defendant provides an example of Benjamin C., not a named plaintiff, but a member of the plaintiff class, who was denied placement in a particular facility because of his physical handicaps. The actual basis for the rejection was the fact that the services to be provided Benjamin were only offered on the second floor of the facility, which did not contain an elevator, and was therefor

totally inaccessible to this wheelchair bound student.

"The intent of both the federal and State Legislature is that the appropriate educational program for a handicapped child must be determined on an individual basis in light of each child's needs." *Esther C. v. Ambach*, 1985–86 E.H.L.R. Dec. 537:264 (Sp.Ct.Alb.Cty. January 22, 1986). It is fundamental to a guarantee of a free appropriate education that each child be considered as an individual. *St. Louis Dev. Dis. Treatment Center v. Mallory*, 591 F.Supp. 1416, 1440 (W.D.Mo.1984). Although it is clearly improper for any child to be placed based upon one of many handicapping conditions, defendant has raised issues of fact as to whether this is actually happening under the current system. From the factual assertions made in defendant's opposing papers, it appears that placements which were denied were not denied on the basis of a sole handicapping condition, but rather because there are flagrant inadequacies in the placements. Although, as noted above, the review process for these placements is fatally flawed, this does not override the consideration that, at least as to the examples cited by defendant, the placements themselves were also fatally flawed. At this time there exist outstanding questions of material fact as to defendant's alleged denials of placements solely on the basis of a single handicapping condition. Plaintiffs' motion for summary judgment on this issue is hereby denied.

Plaintiffs urge this Court to fashion a series of injunctions requiring defendants to act by particular means in remedying the inadequacies in the current system. This Court is not prepared to so rule at this time. Although the E.H.A. provides that a court may fashion such relief as it deems appropriate, 20 U.S.C. § 1415(e)(2), the Supreme Court has noted that the courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy. *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. at 208, 102 S.Ct. at 3051. This decision adequately apprises the State that the current procedures are not in compliance with the requirements of the E.H.A.. The

responsibility as to the methodology for obtaining compliance lies with the State. *Id.* It is worth noting that having failed to meet the requirements of the E.H.A., the State must revise its procedures in order to remain eligible for E.H.A. funding. *Muth v. Central Bucks School District*, 839 F.2d at 126. This Court is confident that the State will make every effort to resolve this apparent conflict in its laws and practices expeditiously.

Having so noted, the Department of Education for the State of New York, and Commissioner Ambach as the named defendant are hereby notified that the practices and procedures currently in place are violative of the E.H.A.. They are required to amend these provisions to bring them into compliance with the Act within 180 days of the date of this order, or face the loss of federal funding.

IT IS SO ORDERED.