OPINION OF THE COURT
Allan L. Winick, J.
Proceeding by Baldwin Union Free School District for judgment pursuant to CPLR article 78 and New York State Education Law § 4404 (3) vacating and setting aside the determination of Henry A. Fernandez, as State Review Officer (SRO), is denied and the SRO’s decision is affirmed and the petition is dismissed.
STATEMENT OF FACTS
Lee R. (Lee) is a fifth grade student at the Steele School in the Baldwin Union Free School District (the District). He has not been in attendance since November 24, 1992.
In April 1991, after a number of meetings with the parents, the Committee on Special Education (CSE) classified Lee as "other health impaired with emotional overlay.” The classification, which is not in dispute, is based upon a medical diagnosis that he has an attention deficit hyperactivity disorder, for which he is being and has throughout the relevant time period been treated. The Individualized Education Plan (IEP) developed for Lee for the school year 1991-1992 recommended that Lee remain in his regular fourth grade education class while receiving one period per day of resource from services, occupational therapy once per week and counseling on an as-needed basis. During that year, Lee’s behavior was aggressive and uncooperative and several modifications were made to the IEP over the course of the year.
For the school year 1992-1993, the IEP recommended a 30-day trial placement in a regular fifth grade classroom with psychological counseling, crisis intervention assistance, social work support services, and as-needed resource room services. At the end of the trial period, the CSE recommended that Lee’s placement be changed to a special education class with a child to adult ratio of 12:1+ 1 for all his instructional needs *541 and that such placement be on a 12-month basis. The CSE further recommended that the child receive one session of individual and one session of group counseling per week and that he be provided with a scribe, i.e., an aide to write for him. The CSE did not identify the school in which the recommended placement was to be made, but did indicate that it would be "out-of-district.” Lee’s parents did not accept the recommendation and, as of about November 24, 1992, Lee ceased attending school. The District initiated a hearing because of the parents’ opposition to the CSE’s recommendation.
THE HEARING
The hearing commenced January 5, 1993, continued March 18, 1993, and concluded May 11, 1993. At the hearing in this proceeding, Lee’s private psychologist testified that an attention deficit hyperactivity disorder is a neurological impulse control disorder, and that children with the disorder are frequently impulsive and have a low frustration tolerance. He testified that Lee’s disability is manifested by his inability to remain focused on a task and his frequent oppositional behavior in school which has affected his ability to achieve his full capability academically.
THE DECISION OF LOCAL HEARING OFFICER
The Hearing Officer issued a decision dated June 7, 1993. The Hearing Officer held that a self-contained special education class would afford the child an opportunity to learn behavior control skills while making academic progress and would be the least restrictive environment for him. The Hearing Officer directed the District to implement a behavior management plan for Lee to address his classroom management needs and to develop positive peer relationships. The Hearing Officer found that the District had demonstrated that none of its special education programs with the district was appropriate, therefore, the matter was remanded to the CSE to determine the location of an appropriate program.
APPEAL TO STATE REVIEW OFFICER
The parents appealed the Hearing Officer’s determination to the SRO who sustained the appeal. The SRO held that the CSE failed to meet its responsibility to recommend an appropriate placement for Lee for the school year 1992-1993 and *542 that such failure delayed the resolution, as a result of which Lee had not received any instruction.
THE SRO’s DECISION
The SRO further found that the District failed to meet its burden of establishing the appropriateness of its recommended program or placement. The placement of the child in self-contained special education classes failed to meet the child’s need in the least restrictive environment. He found that since the child’s academic skills are adequate there was no basis in the record for rejecting a mainstream program with the use of paraprofessionals or adaptive equipment. Finally, the SRO rejected the finding that Lee required a 12-month program. State regulation requires CSE to consider year-round placement in accordance with a need to prevent substantial regression. (8 NYCRR 200.6 [j]; 200.1 [nn].) The SRO found that the District had failed to offer evidence of possible regression if Lee did not attend a program during the summer. The School District brought this CPLR article 78 proceeding.
THE LAW
The first and second causes of action of the petition challenging the SRO’s decision as being partial and arbitrary, capricious, unreasonable and affected by an error of law because the SRO is an employee of the State Education Agency, are dismissed as lacking merit. The petitioner School District lacks standing to bring these claims. Where this issue was raised by the local school committee, "MSC”, in a Federal case in Rhode Island, Colin K. v Schmidt (536 F Supp 1375 [1982]), the court stated (at 1385): "The Court finds MSC’s contention to be unmeritorious. Even assuming that the Rhode Island state educational agency is involved in the 'education or care’ of Colin and Alan, Conference Report 49, reprinted in [1975] U.S.Code Cong. & Ad.News 1425, 1502, MSC is not the proper party to challenge the alleged defect in the state review procedure. Local educational agencies are simply not within the 'protected class’ that Congress envisioned when it prohibited review officers from being employees of the state educational agency involved in the care of the handicapped child at issue. The legislative history of 20 U.S.C. § 1415(c) indicates that this prohibition was intended exclusively to benefit handicapped children and their parents and guardians by insuring absolute impartiality in the administra *543 tive process. See Conference Report 49, reprinted in [1975] U.S.Code Cong. & Ad.News 1425, 1502 0[A]ny parent or guardian may present a complaint concerning any matter’, and '[t]he hearing will be conducted by an impartial . . . officer since the State or local agency . . . will be a party to any complaint presented.’)” (Emphasis supplied.) Further, as stated by the court in Andrews v Ledbetter (880 F2d 1287, 1290 [11th Cir 1989]): "However, nothing [in the Education of the Handicapped Act, now Individuals with Disabilities Education Act (20 USC § 1400 et seq., added by Pub L 91-230, § 601, 84 US Stat 125) (the Act)] indicates that Congress intended to grant an LEA [Local Education Agency] statutory standing to bring suit to compel a state agency to fulfill its statutory duties.”
The cases cited by the petitioner, Burr v Ambach (863 F2d 1071 [1988]) and Louis M. v Ambach (714 F Supp 1276 [ND NY 1989]), are not applicable here. Clearly, the facts in those cases differ materially from the facts before this court.
The review procedure utilized in the instant case did not violate the Federal statute. The petitioner’s assertions regarding the validity of New York’s review process are erroneous. The New York State’s system and practice on review of hearings for pupils with handicapping conditions is in compliance with the Act’s requirement of impartial review. Effective July 1, 1990 legislation was enacted authorizing the review of a Hearing Officer’s determination by the SRO, rather than the Commissioner of Education (L 1990, ch 53, §§ 60, 112; Education Law § 4404 [2]; 8 NYCRR 276.10). Pursuant to the amended regulations, the SRO is designated specifically to conduct a State review in compliance with written rules regarding impartiality (8 NYCRR 279.1 [b], [c]). (See, Heldman v Sobol, 962 F2d 148, 152, n 5 [2d Cir 1992].) While the SRO is subordinate to the Commissioner of Education, he is not a member of the Executive Cabinet of the State Education Commissioner and is not privy to discussions with respect to policy, planning and supervision of elementary education.
Further, the documentary evidence amply demonstrates that the Federal agency charged with administering the Individuals with Disabilities Education Act has approved New York’s system for State level review, and that it specifically rejected proposals to prohibit State employees from serving as SRO’s.
The SRO acts solely in an appellate capacity and is not a party to the administrative proceeding nor therefore a proper *544 or necessary party to this proceeding. (20 USC § 1415 [c]; see also, Antkowiak v Ambach, 838 F2d 635 [2d Cir 1988].) This is also true as to the respondent Commissioner Sobol particularly so since Education Law § 4404 was amended and the Commissioner is no longer involved in administrative appeals and did not determine the appeal at issue.
The petitioner will be given a review here which is "short of a complete de novo review.” (Colin K. v Schmidt, 715 F2d 1, 5 [1983].) Decisions concerning the education of a handicapped child must be made by experts.
The courts are to give substantial deference to State and local officials and State administrative decisions. As enunciated by the United States Supreme Court:
"[I]t seems highly unlikely that Congress intended courts to overturn a State’s choice of appropriate educational theories in a proceeding conducted pursuant to § 1415(e)(2).
"We previously have cautioned that the courts lack the 'specialized knowledge and experience’ necessary to resolve 'persistent and difficult questions of educational policy.’ * * * We think Congress shared that view, when it passed the Act * * * Therefore, once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States.” (Hendrick Hudson Dist. Bd. of Educ. v Rowley, 458 US 176, 207-208 [1982].)
This case concerns a disagreement between parents and the School District as to the most appropriate method whereby the education of the child is to be facilitated. Accordingly, this court must take great care to avoid displacing the educational policy judgments made by the SRO. (See, Lachman v Illinois State Bd. of Educ., 852 F2d 290, 297 [7th Cir 1988].)
The SRO’s determination to place Lee in a regular classroom supports the requirements of the Act. The mainstreaming preference articulated in section 1412 (5) (B) is one of the "requirements of the Act” referred to by the Supreme Court. Compliance with the mainstreaming requirement is sometimes referred to as placement in the "least restrictive environment.” (Oberti v Board Of Educ., 995 F2d 1204, 1209, n 6 [citation omitted] [3d Cir 1993]; Roncker v Walter, 700 F2d 1058 [6th Cir], cert denied 464 US 864 [1983].)
The SRO determined that the best feasible educational program for Lee in the least restrictive environment consisted of regular classroom placement with resource aids. Pending resolution of the administrative appeal, section 1415 (e) (3) of *545 the Act (the so-called, "stay-put” provision) compels the petitioner to maintain Lee in his current classroom situation. Such determination will provide Lee with an appropriate educational placement and satisfies the requirements of the Act. (See, Oberti v Board of Educ., 995 F2d 1204, 1215, n 21, supra.) The record before the SRO supports the determination rendered; and since there is a rational basis therefor, this court will not interfere therewith. As such decision was not arbitrary or capricious nor based on error of law, this court will not substitute its judgment for that of the SRO. Accordingly, the petition is denied in its entirety and the SRO’s determination is affirmed; and the petition is dismissed.