■ In the Matter of SACKETS HARBOR CENTRAL SCHOOL DISTRICT, Appellant, v FRANK MUNOZ, as State Review Officer of the State Education Department of the State of New York, et al., Respondents. [725 NYS2d 119] —Carpinello, J. Appeal from a judgment of the Supreme Court (Kane, J.), entered September 8, 2000 in Albany County, which, *inter alia,* dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Frank Munoz finding that petitioner violated certain provisions of law relevant to voting procedures.

The instant controversy began in May 1998 when respondents DW. and KB. (hereinafter the parents) requested that a home-based applied behavior assessment (hereinafter ABA) program be included in their son's individualized education program (hereinafter IEP) and that his preschool schedule be concomitantly reduced. Their son, who was three years old at that time and had previously been diagnosed with autism, was covered under the Individuals with Disabilities Education Act (20 USC § 1400 *et seq.* [hereinafter IDEA]). On September 18, 1998, petitioner's Committee on Preschool Special Education (hereinafter the Committee) conducted a meeting to address this request. At the commencement of the meeting, it was announced by petitioner's Committee representative (who also served as the Committee Chair) that a vote was going to be taken to resolve the issue that day.

A dispute arose, however, concerning who then present at the meeting was eligible to cast a vote. It was the view of petitioner that, pursuant to Education Law former § 4410 (3) (a), the Committee consisted of only six participants and, therefore, only these six people were entitled to vote, namely, the Committee Chair, a district kindergarten teacher, the parents (one vote between them), a parent member of the Committee, the Jefferson County representative and the child's special education teacher. The parents argued that, in light of a recent amendment to the IDEA, others present at the meet-

ing who possessed knowledge and special expertise about the child were also considered members of the Committee and, therefore, they were entitled to cast a vote, including the child's one-on-one aide and his speech, occupational and physical therapists. Specifically, this amendment defined an "IEP Team" to include, among others, "at the discretion of the parent or [school district] * * * individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate" (20 USC § 1414 [d] [1] [B] [vi]).

To expedite the parents' expected administrative review of this contested issue, counsel for *petitioner* suggested that all in attendance at the meeting cast a vote so that each participant's position would be recorded. Thus, counsel reasoned, if it was subsequently determined that others at the meeting were indeed entitled to vote, his or her vote would be known and a remand to the Committee would be unnecessary.

Upon our review of the meeting minutes, there were 13 total participants (excluding the parties' respective lawyers and the Committee secretary), 12 of whom stated an opinion for the record. Seven participants were in favor of adding the ABA program to the child's IEP and five were against it. However, because the Committee Chair only counted the votes of the six people that she felt properly comprised the Committee, the request to add the ABA program to the child's IEP was rejected by a vote of 4 to 2. Petitioner accepted the recommendation of the Committee not to add the ABA program to the child's IEP.

As expected, the parents initiated an impartial hearing to review petitioner's determination not to amend the child's IEP as requested (*see*, Education Law § 4404 [1]; § 4410 [7]; 20 USC § 1415 [f] [1]). Following a hearing, and in reliance on the amendment to the IDEA, the Hearing Officer found in favor of the parents on the issue of the composition of the Committee at the September 1998 meeting. Specifically, the Hearing Officer determined that the IDEA amendment defined the composition of the Committee to include those "who have knowledge or special expertise regarding the child, including related services personnel as appropriate" (20 USC § 1414 [d] [1] [B] [vi]). Upon his review of the qualifications of those in attendance who were *not* permitted to vote, the Hearing Officer found that six of those individuals clearly possessed knowledge or special expertise regarding the child and therefore their votes should have been considered. Since the retallied vote was in favor of adding the program to the child's IEP, the Hearing Officer Ordered the Committee to submit a new recommendation to petitioner indicating approval of the parents' request.

Upon petitioner's administrative appeal, respondent Frank Munoz, as State Review Officer (hereinafter the SRO; *see,* Education Law § 4404 [2]; *see also,* 20 USC § 1415 [g]), *inter alia,* agreed with the Hearing Officer's determination that petitioner was required to count the votes of these six individuals and the retallied vote resulted in a Committee recommendation to add the ABA program to the IEP. The instant CPLR article 78 proceeding ensued (*see,* Education Law § 4404 [3]; 20 USC § 1415 [i] [2]). Petitioner challenges that part of the SRO's determination which ruled in favor of the parents on the voting issue, contending primarily that it should be annulled because decisions about a child's IEP should not be resolved by a majority vote. Finding that petitioner failed to raise any objection to the vote itself at the administrative level and, in any event, was estopped from seeking judicial review of a vote which it initiated, Supreme Court sustained the SRO's decision in this regard. Petitioner appeals.

The record unequivocally demonstrates that the Committee Chair directed that a vote be taken to resolve the impasse about whether to amend the child's IEP. During the hearings before the Hearing Officer, petitioner never once asserted that this method of resolving the dispute was inappropriate or even illegal; nor did petitioner make such claim in its petition to the SRO. Rather, the sole dispute below concerned *who* at that meeting was eligible to vote. Thus, from a purely administrative law standpoint, petitioner's claim that voting is an unacceptable method of making recommendations about an IEP is unpreserved for this Court's review since it was not sufficiently raised at the administrative level (*see, e.g., Matter of Gargano v Goord,* 278 AD2d 716; *Matter of Serrano v Goord,* 266 AD2d 661, *lv denied* 94 NY2d 762; *Matter of Blakes v Jacobson,* 259 AD2d 290, 291; *Matter of Edelman v Sobol,* 174 AD2d 896, 898, *appeal dismissed* 78 NY2d 1006).

In any event, while petitioner correctly notes that there was no provision in law or regulation which authorized IEP recommendations to be made by a majority vote in September 1998, we note that there was no statutory or regulatory provision *prohibiting* same either. Rather, only subsequent to the meeting was it commented at the Federal level that it was "inappropriate" to establish an IEP by voting (*see,* 34 CFR part 300, Appendix A) and only subsequent to the meeting was it established at the State level that the Education Department did "not support voting as a means to reach a decision regarding a student's IEP." Under these circumstances, we therefore conclude that the SRO's decision to bind petitioner to the vote it directed was not affected by an error of law.

Nor was the SRO's determination to include the votes of six additional meeting participants in the final tally, arbitrary, capricious or affected by an error of law. In resolving the debate concerning who was eligible to vote at the September 1998 meeting, the Committee Chair relied upon Education Law former § 4410 (3) (a) pertaining to the then composition of the Committee, without any consideration to the expansion of this definition under the recent Federal amendment. To be sure, petitioner had notice of this amendment, as well as its obligation to follow it, despite the Legislature's lag in amending the Education Law to conform. Moreover, upon our review of that amendment, it most certainly expanded the composition of the Committee to include "others with knowledge or special expertise" regarding the child (see, 20 USC § 1414 [d] [1] [B] [vi]) such that, if a vote was going to be directed by petitioner, then the Committee Chair had to include the opinions of those individuals in the tally.

To this end, we note that petitioner objects to the inclusion of these participants' votes *not* because any lacked knowledge or expertise about the child, but because none was affiliated with it. Neither State nor Federal law, however, requires such persons to be affiliated with a school district to qualify as a member of an IEP team. Said differently, petitioner does not claim that the six individuals whose votes are at issue lacked knowledge or expertise about the subject child. Indeed, at the hearing in this matter, the Committee Chair testified that she asked the opinion of "everyone that was participating in the meeting on behalf of [the child] and had some knowledge of [him]." Thus, there being no dispute that each of these six individuals possessed knowledge and special expertise about the child, their votes should have been considered under the procedure adopted by petitioner.

As a final matter, contrary to the contentions of petitioner and the *amicus curiae* in this case, the ramifications of this Court's decision are severely limited. To be sure, this decision cannot be read as any statement concerning the general process by which a school district must develop or review an IEP for a child with disabilities eligible for services under State and Federal law. Nor should it be read as standing for the proposition that a school district *must* utilize a majority vote to resolve an impasse about an IEP. Rather, this decision stands for the simple proposition that, *if* a school district opts to resolve impasses about an IEP by taking a vote at a Committee meeting, *then* it must include all members of the Committee in that vote. Given recent State and Federal clarifications

concerning what should be done if a consensus cannot be reached about an IEP—i.e., the ultimate decision is made by the school district's representative subject to the parents' procedural safeguards—it is unlikely that school districts will now direct that votes be taken to resolve impasses. Thus, any argument that parents will attempt to "pack" IEP meetings with those who share their views in an effort to outnumber school district representatives in a "vote" is inapt.

We have reviewed petitioner's remaining contentions, including its claim that the SRO is a proper and necessary party in this proceeding (see, Matter of Board of Educ. v Sobol, 160 Misc 2d 539, 543-544), and find them to be without merit.

Mercure, J. P., Crew III, Spain and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.